THE DURHAM HERALD CO., INC., CHAPEL HILL PUBLISHING, INC., THE NEWS AND OBSERVER PUBLISHING CO., THE CHATHAM NEWS PUBLISHING COMPANY, AND THE NORTH CAROLINA PRESS ASSOCIA-TION, INC., PLAINTIFFS v. THE NORTH CAROLINA LOW-LEVEL RADIOACTIVE WASTE MANAGEMENT AUTHORITY, DEFENDANT

No. 9210SC542

(Filed 15 June 1993)

1. State § 1.2 (NCI3d) — Low-Level Radioactive Waste Management Authority — papers and items generated by contractors — when become public records

The legislature did not intend for papers and items generated by the Low-Level Radioactive Waste Management Authority's contractors and consultants to become public records upon creation or collection by the contractors or consultants. Instead, when N.C.G.S. § 104G-6(a)(18) and § 132-1 are read together, it is clear that the legislature intended that such papers and items would become public records only when they are received by the Authority in the proper exercise of its discretion.

Am Jur 2d, Records and Recording Laws §§ 1-4.

2. Appeal and Error § 342 (NCI4th) — ineffectual cross-assignments of error

Plaintiff appellees' purported cross-assignments of error were ineffectual where they did not present an alternative basis to support the trial court's decision but merely stated that certain portions of the trial court's judgment were erroneous.

Am Jur 2d, Appeal and Error § 653.

Appeal by defendant from judgment filed 6 March 1992 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 28 April 1993.

On 28 June 1991 plaintiffs filed a complaint against the defendants, North Carolina Low-Level Radioactive Waste Management Authority (Authority) and John H. Mac Millan, Executive Director of the Authority, seeking disclosure of certain documents alleged to be public records. Specifically, plaintiffs asked *inter alia* "that this action be treated as a petition for extraordinary injunctive

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

relief pursuant to N.C. Gen. Stat. § 132-9" and "[f]or an order declaring that all records made or received on behalf of the Authority are public records as defined by N.C. Gen. Stat. § 132-1[.]" The same day, plaintiffs filed a motion to show cause in which they asked the court to order defendant to "show cause, if any, why the documents that are the subject matter of this action should not be ordered disclosed to the public pursuant to G.S. 132-9."

On 16 August 1991 defendants filed an amended answer in which they admitted that the plaintiffs requested to be able to review and copy "records made or received by many of the Authority's approximately forty private contractors and subcontractors[.]" Defendants also admitted that the Authority's records are public records as defined by G.S. 132-1, "subject to the exceptions and limitations generally applicable to Chapter 132 of the General Statutes, having been 'made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of the North Carolina government or its subdivisions.'" However, defendants denied that "records that are and have been exclusively in the hands of private-sector contractors and subcontractors are public records within the meaning of Chapter 132 of the General Statutes." On 20 August 1991 Mr. Mac Millan was dismissed from the suit by order of the Superior Court.

The case was heard at the 10 February 1992 civil term of Superior Court in Wake County before Judge Gregory Weeks. On 6 March 1992 Judge Weeks filed a judgment making the following findings of fact and conclusions of law:

(1) The Court adopts the parties' stipulated facts and incorporates them herein;

(2) Plaintiffs do not seek records in the following categories:

a. personnel records relating to employees or prospective employees of private contractors, except to the extent that such records have been disclosed to the Authority in connection with a bid, proposal, or similar document;

b. personnel records of public employees, except to the extent that such records are public records pursuant to North Carolina law;

c. records protected by the attorney-client privilege and/or the attorney work-product doctrine;

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

d. records used or created in connection with the formulation or preparation of any bid, proposal or similar document;

e. trade secrets as defined by N.C.G.S. § 66-152;

(3) The Public Records law, G.S. §§ 132-1 et seq., applies to the records of "any agency of North Carolina government or its subdivisions." G.S. § 132-1 defines "Agency of North Carolina government or its subdivisions" as "every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government;"

(4) The private businesses hired by the Authority are not government agencies within the meaning of G.S. § 132-1, and this is so notwithstanding that these businesses may be reimbursed or compensated with funds appropriated by the General Assembly and disbursed by the Authority;

(5) G.S. § 104G-6(a)(18) establishes that the Authority "shall receive all field data, charts, maps, tracings, laboratory test data, [and] soil and rock samples" that are "collected or produced by [the Authority's] employees, contractors or consultants pursuant to siting, operating or closing of low-level radioactive waste facilities;"

(6) "Pursuant to G.S. 104G-6(a)(18), all records containing or constituting field data, charts, maps, tracings, laboratory test data, or soil and rock samples relating to the siting, operation or closing of low-level radioactive waste facilities are public records, and are therefore subject to public inspection and copying, when they are made or received by the Authority or by its employees, contractors or consultants."

(7) G.S. 104G-(a)(18) also authorizes the Authority to receive "such other records as the Authority deems appropriate." The Authority "receives" such "other records" only when the records, or copies of the records, are submitted to the Authority.

(8) At such time as the Authority, in the exercise of its statutory discretion, actually receives these "other" records at its administrative offices, they, too, become public records; and

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

(9) The court does not have before it particular records to determine whether they are public records. Therefore, disputes that may arise as to whether specific records must be made available for public inspection pursuant to this judgment will need to be resolved in accord with applicable law and any remedies available at law under this judgment.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:

1. The Authority shall make available for public inspection and copying all records containing or constituting field data, charts, maps, tracings, laboratory test data, or soil and rock samples collected or produced by the Authority's employees, contractors or consultants pursuant to siting, operating or closing of low-level radioactive waste facilities;

2. The Authority shall make available for public inspection and copying all other records received by it in the exercise of the discretion conferred upon it by G.S. 104G-6(a)(18);

3. All requests to inspect and copy records pursuant to this judgment shall be directed to the Authority. If some or all of the records requested are encompassed by paragraph 1 but have not been received by the Authority, the Authority shall promptly obtain the records, or copies of them, and make them available for public inspection and copying.

4. All parties' shall bear their own costs.

Defendant Authority appeals.

*Everett, Gaskins, Hancock & Stevens, by Hugh Stevens and Katherine R. White, for the plaintiff-appellees.*

*Attorney General Lacy H. Thornburg, by Chief Deputy Attorney General Andrew A. Vanore, Jr., Special Deputy Attorney General Terry Richard Kane and Assistant Attorney General K.D. Sturgis, for the defendant-appellant.*

EAGLES, Judge.

I

[1]    This case presents a question of first impression here — whether records made by contractors and subcontractors (contractors) of the Authority, kept by the contractors and not actually received

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

by the Authority are public records, as defined under G.S. 132-1, requiring disclosure under North Carolina's public records law.

G.S. 132-1 provides:

> "Public record" or "public records" shall mean all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions. Agency of North Carolina government or its subdivisions shall mean and include every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council department, authority or other unit of government of the State or any county, unit, special district or other political subdivision of government.

Under this statute, in determining access issues two questions must be answered: first, whether a contractor is an "[a]gency of North Carolina government or its subdivisions"; and second, if a contractor is found to be an agency, whether its records are "public records" that were "made or received pursuant to law or ordinance in connection with the transaction of public business. . . ." *News & Observer Publishing Co. v. Wake County Hosp. Sys.*, 55 N.C. App. 1, 284 S.E.2d 542 (1981), *disc. rev. denied*, 305 N.C. 302, 291 S.E.2d 151, *cert. denied*, 459 U.S. 803, 74 L. Ed. 2d 42 (1982). The trial court found that the contractors are *not* agencies as defined by G.S. 132-1, and there has been no appeal from that finding. That finding is the subject of a cross-assignment of error by appellees but the cross-assignment is not effective to attack the judgment itself. Cross-assignments have limited utility; they can be effective to provide additional bases or alternative grounds to support a judgment or portion of a judgment which successfully has been attacked by appellant. There is no dispute that the Authority itself is a State agency. We now address the issue of when papers and items produced and held by consultants acting pursuant to contracts with the Authority become subject to disclosure pursuant to the Public Records Act.

"It is established '[u]nder the rules of statutory construction, statutes *in pari materia* must be read in context with each other.' *Cedar Creek Enterprises, Inc. v. Department of Motor Vehicles*,

612 IN THE COURT OF APPEALS

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976). *Accord, Newlin v. Gill*, 293 N.C. 348, 237 S.E.2d 819 (1977). *'In pari materia'* is defined as '[u]pon the same matter or subject.' Black's Law Dictionary 898 (4th ed. 1968)." *News & Observer*, 55 N.C. App. at 8-9, 284 S.E.2d at 546. Furthermore, " '[w]hen the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.' " *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992) (quoting *Lemons v. Boy Scouts of America, Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988). Finally, "[i]n the interpretation of statutes the legislative will is the controlling factor." *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 294 (1975).

G.S. 132-1 and G.S. 104G-6(a)(18) both address the issue: under what circumstances do papers and items generated by the Authority's contractors become public records?

G.S. 104G-6(a) provides in part:

(a) To carry out the purposes of this Chapter, the Authority:

* * *

(18) Shall receive all field data, charts, maps, tracings, laboratory test data, soil and rock samples, and such other records as the Authority deems appropriate, collected or produced by its employees, contractors, or consultants pursuant to siting, operating, or closing of low-level radioactive waste facilities. All such data and materials shall become the property of the State and shall not be disposed of except in accordance with G.S. 132-3 except that soil and rock samples may be subjected to tests and reduced in volume for purposes of storage in a manner approved by the Authority. The Authority may enter into agreements with other State agencies for the purpose of storage and preservation of data and materials.

It is clear that under G.S. 104G-6(a)(18) the Authority must receive certain enumerated papers and items generated by its contractors, and that the Authority has discretion to receive other papers and items generated by its contractors. G.S. 104G-6(a)(18) provides that the Authority *shall* receive "all field data, charts, maps, tracings, laboratory test data, soil and rock samples . . ." generated by the Authority's contractors. It also provides that

DURHAM HERALD CO. v. LOW-LEVEL RADIOACTIVE WASTE MGMT. AUTH.

[110 N.C. App. 607 (1993)]

the Authority shall receive "such other records as the Authority deems appropriate. . . ." However, the second sentence of G.S. 104G-6(a)(18) provides, in pertinent part, that "[a]ll such data and materials shall become the property of the State. . . ." The phrase "[a]ll such data and materials" obviously includes those items that the Authority is mandated to receive and those which the Authority has exercised its discretion to receive. The phrase "shall become the property of the State" clearly indicates that the General Assembly intended that at some unstated time the data and materials would become *State* property, as distinguished from being the property of the consultant. The statute does not spell out precisely when the items "shall become the property of the State" and, therefore, subject to the Public Records Act's disclosure provisions. Accordingly, we hold that the General Assembly did not intend that the consultant-generated papers and items would be public records immediately upon creation or collection by the consultants or contractors. Instead, reading G.S. 104G-6(a)(18) and G.S. 132-1 together, we conclude that the General Assembly intended that the papers and items would become public records only when they are received by the Authority in the proper exercise of its discretion.

Here, the appellees have not pled and the trial court did not find or conclude that the Authority abused its discretion by attempting to prevent public disclosure of information by delaying or declining receipt of contractor-generated papers and items from contractors. Accordingly, the trial court's order requiring the Authority to obtain records from its contractors must be vacated.

## II

Because of our disposition of the foregoing issue we need not address the remaining arguments raised by the appellant.

## III

[2] Finally, we note that the appellees bring forward four "cross-assignments of error." Each cross-assignment states that certain portions of the trial court's judgment were erroneous. They do not present an alternative basis for the trial court's decision. "The proper means by which to raise such an attack is an independent appeal." *Whedon v. Whedon*, 68 N.C. App. 191, 196, 314 S.E.2d 794, 797 (1984), *reversed on other grounds*, 313 N.C. 200, 328 S.E.2d 437 (1985). The appellees have failed to cross-appeal. Accordingly,

to the extent appellees' cross-assignments have not already been addressed they are overruled.

Vacated.

Judges MARTIN and JOHN concur.