490 S.E.2d 708

**AFFILIATED CONSTRUCTION TRADES FOUNDATION and Bruce Tarpley, President of Affiliated Construction Trades Foundation, Appellants,**

v.

**REGIONAL JAIL AND CORRECTIONAL FACILITY AUTHORITY, and Jack Roop, Executive Director of the Regional Jail and Correctional Facility Authority, Appellees.**

No. 23750.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided July 11, 1997.

**622**

Stuart Calwell, Shirley A. Skaggs, Calwell & McCormick, Charleston, for Appellants.

Darrell V. McGraw, Jr., Attorney General, Chad M. Cardinal, Assistant Attorney General, Charleston, for Appellees.

MAYNARD, Justice:

The appellants, Affiliated Construction Trades Foundation and Bruce Tarpley, its President, appeal the January 22, 1996, order of the Circuit Court of Kanawha County granting the motion for summary judgment of the appellees, the Regional Jail and Correctional Facility Authority and its Executive Director, Jack Roop, in a declaratory and injunctive relief action brought pursuant to West Virginia's Freedom of Information Act, W.Va.Code § 29B–1–1 *et seq.*, in which Affiliated Construction Trades Foundation requested the circuit court to declare that it is entitled to copies of certified payrolls requested from the Regional Jail and Correctional Facility Authority. The circuit court held that the certified payrolls are not public records as defined by W.Va.Code § 29B–1–2(4) (1977), and that the Regional Jail and Correctional Facility Authority could not be compelled to acquire and produce these documents. For the reasons set forth below, we affirm the order of the circuit court.

On October 15, 1993, the appellants, Affiliated Construction Trades Foundation, a non-profit organization with various functions, and its President requested in writing, pursuant to the provisions of this State's Freedom of Information Act (FOIA), W.Va.Code § 29B–1–1 *et seq.*, that the appellees, the Regional Jail and Correctional Facility Authority and its Executive Director, Jack Roop, allow the appellants to examine "all payrolls" for NLP, Inc. for several specified weeks.[1] The Regional Jail and Correctional Facility Authority is a statutorily created government instrumentality whose purpose is the construction, maintenance, and operation of jails and correctional facilities in this State.[2] NLP, Inc. is a private company

---

1. 42 C.S.R. § 7–7.1 (1982) states in relevant part:

    The contractor and each subcontractor or the officer of the public authority in charge of the construction of a public improvement shall keep an accurate record.

    There is no mandatory format; however, all payrolls must contain the following information:

    (a) The employee's full name, address and social security number (This is necessary on the first payroll on which his or her name appears; thereafter, only his or her name, unless a change of name or address.);

    (b) The employee's classification;

    (c) The employee's hourly wage rate and, where applicable, his or her overtime hourly wage rate;

    (d) The daily and weekly hours worked in each classification, including actual overtime hours worked (not adjusted);

    (e) The itemized deductions made;

    (f) The net wages paid [.]

2. The Regional Jail and Correctional Facility Authority was created by W.Va.Code § 31–20–1 *et seq.* W.Va.Code § 31–20–1a(b) (1989) states:

    The purposes of this article are as follows:

    (1) To provide a cost-efficient system within this state for the construction, maintenance and operation of jails and correctional facilities;

    (2) To develop and implement plans for the renovation and improvement of existing facilities and the design and construction of new facilities to better serve the inmate population and the citizens of this state;

    (3) To provide an environment in which new and innovative corrections programs may be considered and undertaken, and in which opportunities may be offered to inmates to overcome personal deficiencies which are educational, vocational, social or psychological in nature;

    (4) To investigate the feasibility of individualizing and classifying inmates according to

which acted as a subcontractor in the construction of a correctional facility.

By letter dated October 20, 1993, Frank G. Shumaker, the appellees' Deputy Director for Administration, denied the appellants' request explaining that, because NLP, Inc. was a subcontractor, the appellees did not have a contract with NLP, Inc. and did not have any of the requested payrolls.[3] On November 19, 1993, the appellants filed a petition for declaratory and injunctive relief in the Circuit Court of Kanawha County, asking the court to declare that they are entitled to copies of the payrolls requested from the appellees.[4] All parties filed motions for summary judgment. After a hearing on these motions, the circuit court concluded as a matter of law that the payrolls requested by the appellants were not public records because they were not prepared, owned, retained, or controlled by the appellees. The court held, therefore, that the appellees did not have a clear legal duty to acquire the payrolls for the purpose of making them available to the appellants and, accordingly, granted the appellees' motion for summary judgment. The appellants appeal the circuit court's order.

Initially, we note that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Also, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty And Surety Company v. Federal Insurance Company Of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Accordingly, "[s]ummary judgment is appropri-

ate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We now examine the case before us in light of this standard.

The sole issue before us is whether the payroll records requested by the appellants were public records under this State's FOIA so that the appellees had a legal duty to furnish these records to the appellants for examination and inspection.

West Virginia's Freedom of Information Act (FOIA), at W.Va.Code § 29B–1–3(1) (1992), provides that "[e]very person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by section four [§ 29B–1–4] of this article." W.Va.Code § 29B–1–2(4) (1977) defines a public record as "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." In *Daily Gazette Co., Inc. v. Withrow*, 177 W.Va. 110, 350 S.E.2d 738 (1986), we dealt at length with this definition. In *Withrow*, The Daily Gazette Company requested, pursuant to the FOIA, that the Sheriff of Kanawha County make available for inspection and copying all documents reflecting the terms of the legal settlement of a federal civil rights action brought against the sheriff by a former deputy sheriff, and the sheriff's subsequent counterclaim. The sheriff denied the request stating that there were no documents in his office relating to any such settlement. In reversing the trial

---

their psychological and physical conditions at the time they are incarcerated, and the feasibility of designing for each such inmate a plan for self-improvement and rehabilitation.

3. W.Va.Code § 29B–1–3(4) (1992) states, in part:
   All requests for information must state with reasonable specificity the information sought. The custodian, upon demand for records made under this statute, shall as soon as is practicable but within a maximum of five days not including Saturdays, Sundays or legal holidays:
   (a) Furnish copies of the requested information;

(b) Advise the person making the request of the time and place at which he or she may inspect and copy the materials; or
(c) Deny the request stating in writing the reasons for such denial.

4. In its November 19, 1993 petition, the appellants originally named additional parties as defendants pursuant to information requests under the FOIA unrelated to the facts of this case. By Order of the Circuit Court of Kanawha County, dated September 22, 1995, the cause of action against these additional defendants was dismissed.

court's denial of the Gazette's request for injunctive relief, we held:

> Lack of possession of an existing writing by a public body at the time of a request under the State's Freedom of Information Act is not by itself determinative of the question whether the writing is a "public record" under W.Va.Code, 29B–1–2(4), as amended, which defines a "public record" as a writing "retained by a public body." The writing is "retained" if it is subject to the control of the public body.

Syllabus Point 3, *Daily Gazette Co., Inc. v. Withrow*, 177 W.Va. 110, 350 S.E.2d 738 (1986). This Court therefore concluded that while the sheriff may not have actual possession of the requested documents, he had control over their production in that he could authorize his attorney or the county's insurer's attorney to produce copies of the documents. *Withrow*, 177 W.Va. at 118, 350 S.E.2d at 746.

In the present case, the appellants assert that the requested payroll records are subject to the control of the appellees and, therefore, are public records under the FOIA. According to the appellants, the appellees have a legal duty to acquire copies of the payroll records. This contention is based on the appellees' right under W.Va.Code § 21–5A–8 (1961) to inspect the payrolls of a subcontractor, and its duty under 42 C.S.R. § 7–4.3 to ascertain and certify to the Commissioner that the proper wage rates are paid. W.Va.Code § 21–5A–8 states:

> The contractor and each subcontractor *or* the officer of the public authority in charge of the construction of a public improvement shall keep an accurate record showing the names and occupation of all such skilled laborers, workmen and mechanics employed by them, in connection with the construction on the public improvement and showing also the actual wages paid to each of the skilled laborers, workmen and mechanics, which record shall be open at all reasonable hours to the inspection of the department of labor and the public authority which let the contract, its officers and agents. It shall not be necessary to preserve such record for a period longer than three years after the

termination of the contract. (emphasis added).

42 C.S.R. § 7–4.3 (1982) provides:

> The final payment to the contractor shall be withheld until such time as the public authority, who is charged with the disbursement of the funds has ascertained and so certified to the Commissioner that the wage rates as determined by the Commissioner are paid. Further, final payment shall be withheld if the Commissioner notifies public authority that the contractor is in violation of the [Wages for Construction of Public Improvements Act] or these regulations.

The appellants claim that the appellees should now be required to fulfill their legal duty to obtain copies of the payroll records and furnish these records to the appellants for examination.

It is ordinarily held that the Freedom of Information Acts impose no duty upon an agency to "create" a public record. *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980); *Durham Herald v. Low–Level Radioactive Waste*, 110 N.C.App. 607, 430 S.E.2d 441 (1993), *rev. denied*, 334 N.C. 619, 435 S.E.2d 334 (1993). This Court has followed this approach to our FOIA, stating in *Withrow*:

> There is no obligation under the State FOIA to create any particular record, but only to provide access to a public record already created and which is "retained" by the public body in question. *See Kissinger v. Reporters Committee*, 445 U.S. 136, 152, 100 S.Ct. 960, 969, 63 L.Ed.2d 267, 282 (1980). Thus, the State FOIA does not itself require a public body to create litigation settlement documents to be retained for public inspection.

*Withrow*, 177 W.Va. at 119, n. 9, 350 S.E.2d at 746, n. 9 (1986). Thus, the West Virginia Freedom of Information Act, W.Va.Code § 29B–1–1 *et seq.* does not require the creation of public records. However, in Syllabus Point 5, *Withrow*, *supra*, we held that "[a] public official has a common law duty to create and maintain, for public inspection and copying, a record of the terms of settlement of litigation brought against the public official or his or her employee(s) in their official capacity." We noted in *Withrow* that the complaint in that case included a count for

declaratory relief which was *not* brought under the FOIA, seeking the creation of a public record.

In the instant case, the appellants did not assert in the circuit court that the appellee has a common-law duty to create a record documenting and verifying that wages had been paid in accordance with the Wages for Construction of Public Improvements Act, W.Va.Code § 21–5A–1 *et seq.* Moreover, the Commissioner of Labor, who has the primary statutory duty to enforce the Wages for Construction of Public Improvements Act was not named as a party to the lower court proceedings.[5] It is unclear from the statutory or regulatory provisions, or the record in this case whether the Commissioner of Labor possesses a copy of the payroll records requested by the appellants. The appellants state in their brief to this Court that the Department of Labor routinely provides certified payrolls pursuant to FOIA requests. Therefore, appellants should be able to obtain access to the requested payroll records from the Commissioner of Labor.

In fact, it is clear from the provisions of W.Va.Code § 21–5A–8 that the Department of Labor has an absolute right to inspect and copy the contractor's and subcontractor's records regarding wages paid to skilled laborers, workmen, and mechanics. In addition, the contractor and subcontractor may be required to file these records with the Department of Labor and, once filed, such

records would be subject to public access under FOIA. Consistent with the provisions of 42 C.S.R. § 7–4.3 (1982), only after the public authority has "ascertained" and "certified" to the Commissioner for the Department of Labor that wages have been paid, does the public authority (in this instance the Regional Jail Authority) pay monies to the contractor or subcontractor.

The public policy of this State favors the direct access of individual members of the public to information regarding the public's business.[6] Certainly information which documents and verifies the compliance with laws designed to protect the public interest by contractors who are performing publicly-funded work on public improvement projects is information that is strongly affected with a compelling public interest. It is information to which individual members of the public as well as their public servants should have access, subject to the exceptions provided for by law. If public records containing information documenting and verifying a contractor's compliance with the law are not available for inspection and copying from the officer of the public authority in charge of the construction, the petitioners may, by appropriate action, request said information from the Department of Labor.

However, this is not the issue which was before the circuit court in the instant case. Rather, the issue presented to the circuit court was whether certified payroll records

5. 42 C.S.R. § 7–3.1(*l*) (1982) provides that every contract to which the state is a party for construction shall

> provide that the contractor and each subcontractor shall file a statement at the request of the Commissioner [of Labor] and a final statement at the conclusion of the work on the contract with the Commissioner, under oath, certifying that all workmen have been paid wages in strict conformity with the provisions as prescribed by this Section 3 of these regulations, or if any wages remain unpaid to set forth the amount of wages due and owing each workman respectively.

6. Our law disavows the notion that the access of the public's representatives to information is an adequate substitute for the direct acquisition of information by citizens themselves. It is clear from the following language from the West Virginia Freedom of Information Act, W.Va.Code § 29B–1–1 (1977) that absent compelling circumstances and specific legislative direction, in-

dividual members of the public should have access to the same information relating to the conduct of the public's business to which their representatives have access.

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. *The people insist on remaining informed so that they may retain control over the instruments of government they have created.*
> W.Va.Code § 29B–1–1 (1977) (emphasis added).

prepared, created, and maintained by a sub-contractor, but available for inspection and copying by the state, were "public records" under the FOIA. Just because a public agency has a statutory *right* to copy writings prepared, owned, and retained by a private entity, these writings do not automatically become public records under the FOIA. We agree with the reasoning of the United States Supreme Court in *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980) and the Court of Appeals of North Carolina in *Durham Herald v. Low–Level Radioactive Waste,* 110 N.C.App. 607, 430 S.E.2d 441 (1993), *rev. denied,* 334 N.C. 619, 435 S.E.2d 334 (1993).

*Forsham* involved a group of private physicians and scientists which was solely funded by federal grants to conduct a long-term study of the effectiveness of five diabetes regimens. The federal agency that funded the study exercised a certain amount of supervision over the study such as review of periodic reports, on-site visits, and approval of major program or budgetary changes. The federal agency also had the right to access documents of the study and the right to obtain permanent custody of the documents upon request. However, the federal agency did not exercise its right either to review or to obtain permanent custody of the documents, which consisted of the raw data of the study. In holding that the federal agency did not have to furnish raw data not obtained by it, the Court explained:

> Petitioners place great reliance on the fact that HEW [the federal agency who funded the study] has a right of access to the data, and a right if it so chooses to obtain permanent custody of the [private organization's] records. But in this context the FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained. To construe the FOIA to embrace the latter class of documents would be to extend the reach of the Act beyond what we believe Congress intended.... [T]he FOIA imposes no duty on the agency to create records. By ordering HEW to exercise its right of access, we effectively would be compelling the agency to "create" an agency record since prior to that exercise the record was not a record of the agency.

*Forsham,* 445 U.S. at 185–186, 100 S.Ct. at 987, 63 L.Ed.2d at 307–308 (Citations and footnote omitted).

*Durham Herald* concerned the question of "whether records made by contractors and subcontractors (contractors) of the [North Carolina Low–Level Radioactive Waste Management Authority], kept by the contractors and not actually received by the Authority are public records, as defined under G.S. § 132–1, requiring disclosure under North Carolina's public records law." *Durham Herald,* 430 S.E.2d at 444. Unlike our statutory scheme concerning private payroll records on public construction projects, North Carolina's relevant statute provided that the Authority "must receive certain enumerated papers and items generated by its contractors, and that the Authority has discretion to receive other papers and items generated by its contractors." *Durham Herald,* 430 S.E.2d at 445. In addition, the statute provided that all such materials acquired by the Authority "shall become the property of the state." *Id.* The Court of Appeals of North Carolina held that,

> the General Assembly did not intend that the [writings at issue] would be public records immediately upon creation or collection by the consultants or contractors. Instead, reading [the relevant statutes] together, we conclude that the General Assembly intended that the papers and items would become public records only when they are received by the Authority in the proper exercise of its discretion.

*Id.*

■ We conclude that where a public body has a legal right to obtain a copy of a writing relating to the conduct of the public's business, which was prepared and retained by a private party, but the public body does not exercise that right, the fact that the public body has the right to obtain a copy of the document does not, standing alone, mean that the writing is a "public record" as defined by the Freedom of Information Act, W.Va.Code § 29B–1–2(4) (1977).

The appellants rely on *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) and *Carbondale Township v. Murray,* 64 Pa.Cmwlth. 465, 440 A.2d 1273 (1982) to

support their argument. In *Kissinger* the United States Supreme Court held that an individual must establish that an agency has "improperly withheld" an agency record in order to obtain access to it through an FOIA action. *Kissinger*, 445 U.S. at 139, 100 S.Ct. at 963, 63 L.Ed.2d at 274. *See also Forsham*, 445 U.S. at 177, 100 S.Ct. at 982–83, 63 L.Ed.2d at 302. In *Carbondale Township*, the Commonwealth Court of Pennsylvania held that a township must authorize its banking institution to furnish for inspection copies of its canceled checks pursuant to that state's Right–to–Know Law after first determining that the canceled checks were within the Right–to–Know Law's definition of a public record. Since the holdings of both of these cases concern writings found to be within the scope of the applicable disclosure law, we do not find either of these cases to be instructive here.[7]

Accordingly, we affirm the circuit court's order granting summary judgment on behalf of the appellees.

Affirmed.

7. While the majority does not agree, the author of this opinion strongly believes that if this Court were to adopt the appellants' interpretation of what constitutes a public record under our FOIA, it could prove very burdensome and costly to public agencies. In the present case it may not be burdensome for the appellees to copy and furnish the requested payroll records. In other situations, however, an agency could be forced to bear the burden and cost of photocopying and maintaining vast amounts of material for which it would otherwise have no use.