550 S.E.2d 598

Laura MANNS, Plaintiff Below, Appellee,

v.

CITY OF CHARLESTON POLICE DE-
PARTMENT and Jerry Riffe, in his Offi-
cial Capacity as Chief of Police, Defen-
dants Below, Appellants.

No. 28743.

Supreme Court of Appeals of
West Virginia.

Submitted March 20, 2001.

Decided May 15, 2001.

Concurring Opinion of Justice
Starcher July 24, 2001.

John R. Teare, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, West Virginia, Attorney, Attorney for Appellants.

Jason E. Huber, Forman & Crane, Charleston, West Virginia, Attorney, Attorney for Appellee.

Amicus Brief Dennis R. Vaughan, Jr., James V. Kelsh, West Virginia Municipal League, Inc.

PER CURIAM:

This case is before this Court upon appeal of a declaratory and injunctive relief order entered by the Circuit Court of Kanawha County on February 24, 2000, ordering the appellants and defendants below, the City of Charleston Police Department and Jerry Riffe, in his official capacity as Chief of Po-

lice[1] (hereinafter "appellants"), to disclose various police records including internal investigation documents pursuant to a Freedom of Information Act request by the appellee and plaintiff below, Laura Manns. In this appeal, the appellants contend that the circuit court erroneously concluded that the requested documents were not exempt from disclosure pursuant to W.Va.Code § 29B–1–4 (1977).

This Court has before it, the petition for appeal, the entire record, and the briefs and argument of counsel.[2] For the reasons set forth below, the final order of the circuit court is reversed.

## I.

The appellee was arrested on November 11, 1996, after she refused to pay a bus fare at the KRT Transit Mall in Charleston, West Virginia. The appellee was charged with several offenses including battery on a police officer and resisting arrest. Thereafter, the appellee asserted that police officer Cathy Smith used excessive force in carrying out her arrest. Accordingly, the appellants initiated an internal investigation. In addition, the appellants asked the Federal Bureau of Investigation (hereinafter "FBI") to conduct its own, independent investigation. Both the appellants and the FBI exonerated Officer Smith.

Subsequently, the appellee retained counsel to represent her in a federal civil rights claim and to defend her against the criminal charges.[3] As part of her pre-suit investigation, the appellee requested that the appellants provide various records and information including internal investigation documents to her pursuant to the Freedom of Information Act, W.Va.Code § 29B–1–1 to –7 (1977) (hereinafter "FOIA"). The appellants produced about half of the records the appellee requested and objected to supplying the remaining documents and information. Consequently, the appellee filed suit in the Circuit

Court of Kanawha County on February 5, 1997, and requested the circuit court to compel disclosure of the remaining documents despite the appellants' objections. After the matter was briefed and argued, the circuit court ruled that the appellee was entitled to a mandatory injunction compelling the production of the records that she requested, except the limited documents to which there is a valid internal memoranda claim.

## II.

■ We begin our analysis of this case by setting forth our standard of review. As discussed above, this case requires an interpretation of the FOIA. In Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." With this standard in mind, we now consider the parties' arguments.

This appeal primarily concerns the appellee's FOIA request for the following information:

a. The names of every officer against whom a complaint has been made, or who the Charleston Police Department has investigated on their own, regarding that officer's behavior while in the course of employment or otherwise;

b. The names of every officer against whom a civil or criminal complaint has been filed regarding their behavior while in the course of employment or otherwise;

c. In respect to subpart "a" and "b" please state the outcome of said complaints or investigations.

The appellee has also requested information regarding the officer who arrested her. Specifically, the appellee has asked whether any complaints have been filed against the officer; the substance of those complaints; and

---

1. Jerry Riffe succeeded Fred Marshall as Chief of Police during the pendency of this litigation and was substituted as a party in this case pursuant to Rule 25(d) of the West Virginia Rules of Civil Procedure.

2. At this point, we also note that the West Virginia Municipal League, Inc., filed an amicus brief urging reversal of the circuit court's order.

3. The Kanawha County Prosecutor never prosecuted the appellee on the criminal charges.

the disposition of those complaints. The appellee has further sought a copy of or access to the appellants' records regarding the investigation of the appellee's arrest.

This Court recently addressed a similar request for police records in the context of discovery during civil litigation. In *Maclay v. Jones*, 208 W.Va. 569, 542 S.E.2d 83 (2000), the plaintiffs, Donald and Karen Maclay, through a notice of deposition and subpoena *duces tecum*, requested records relative to an internal affairs investigation of complaints filed against a state trooper as well as the trooper's personnel file. In response, the defendant West Virginia State Police sought a protective order claiming that statutory and common law privileges prohibited disclosure of the requested information. Eventually, the circuit court certified questions to this Court for a determination of whether this type of information was subject to disclosure during civil litigation.

■■■■ In Syllabus Point 2 of *Maclay*, this Court determined that:

> The provisions of this state's Freedom of Information Act, West Virginia Code §§ 29B–1–1 to –7 (1998), which address confidentiality as to the public generally, were not intended to shield law enforcement investigatory materials from a legitimate discovery request when such information is otherwise subject to discovery in the course of civil proceedings.

Thus, this Court held that:

> Records and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation arising out of alleged police misconduct if, upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in maintaining the confidentiality of such information.

Syllabus Point 3, *Maclay*. However, we also stated that:

> Before a circuit court is required to engage in an *in camera* inspection of records and information compiled by an internal affairs division of a police department to make a determination regarding the production of such documents through discovery, the party opposing disclosure must first make a substantial threshold showing that specific harms are likely to result from the disclosure of the requested materials.

Syllabus Point 4, *Maclay*. While our decision in *Maclay* is certainly instructive, it is not dispositive of the issues now before us. In this case, the police records were sought through a FOIA request and at that time, there was no ongoing litigation.[4] As we noted in *Maclay*, the "FOIA provisions which address the confidentiality of records and their availability to the general public are aimed at protecting interests distinct from those at issue when records are requested in conjunction with a civil rights action." 208 W.Va. at 574, 542 S.E.2d at 88 (citations omitted). Thus, we must determine whether the documents requested by the appellee are exempt from disclosure pursuant to W.Va. Code § 29B–1–4 as asserted by the appellants.

■■■■ The FOIA provides that "[e]very person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by section four [§ 29B–1–4] of this article." W.Va.Code § 29B–1–3(1) (1992). Before we address the exemptions set forth in W.Va.Code § 29B–1–4, we note that one of the appellee's requests is for "the names of every officer against whom a civil or criminal complaint has been filed regarding their behavior while in the course of employment or otherwise." Pursuant to W.Va.Code § 51–4–3 (1990), civil and

---

4. The complaint in this case was filed pursuant to W.Va.Code § 29B–1–5 (1977) which provides that "[a]ny person denied the right to inspect the public record of a public body may institute proceedings for injunctive or declaratory relief in the circuit court in the county where the public record is kept." Subsequent to the filing of the complaint in this case, the appellee filed a federal civil rights claim in the United States District Court for the Southern District of West Virginia.

During the course of that litigation, the appellee was given access to the internal investigation documents concerning her arrest. According to the parties, the federal civil rights case has been settled making this appeal arguably moot. However, as noted above, this case was filed in the context of a FOIA request, and therefore, we believe it is necessary to address the merits of this appeal.

criminal complaints are filed in and maintained by the circuit clerk's office. Because W.Va.Code § 29B–1–3(2) requires a request to inspect or copy a public record to be directed to the custodian of such public record, we find that the appellants fully complied with this FOIA request by providing the names of all of the current police officers. With the names of the officers, the appellee could obtain the information she seeks in this request by inspecting the records of the circuit clerk as provided for in the FOIA as well as W.Va.Code § 51–4–2 (1923).[5] Therefore, we find that the circuit court erred to the extent that it ordered the appellants to provide additional information to satisfy this FOIA request by the appellee.

■ We now consider the appellee's remaining requests which seek internal investigation records. The appellants claim that this requested information should not be disclosed pursuant to W.Va.Code § 29B–1–4(2) which exempts:

> Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: Provided, That nothing in this article shall be construed as precluding an individual from inspecting or copying his own personal, medical or similar file.

The appellants contend that the circuit court erred by making a blanket finding that there was no potential for an "unreasonable invasion of privacy." The appellants assert that this statutory provision contemplates individualized review of the privacy interests of each affected employee. Given the fact that the appellants employ approximately 182 police officers, they claim that the appellee's request is unreasonable especially since it

contains no time limitation. More importantly, the appellants state that the appellee's request would require them to disclose private information about the officers which includes complaints regarding their job performance.

By contrast, the appellee claims that the release of documentation regarding complaints against city officers and the disposition of those complaints would not constitute an invasion of privacy. The appellee further claims that she is not interested in "highly personal information" that is not related to the performance or fitness of a police officer. The appellee maintains that the circuit court correctly found that there is no compelling reason to conclude that the public interest requires anything other than full disclosure of the records of completed investigations regarding complaints of professional misconduct by police officers.

■ "The primary purpose of the invasion of privacy exemption to the [FOIA], *W.Va. Code*, 29B–1–4(2) [1977], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Syllabus Point 6, *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985). Thus, we must first determine whether the records requested in this case contain "information of a personal nature such as that kept in a personal, medical or similar file" as set forth in W.Va.Code § 29B–1–4(2). We did not consider this issue in *Maclay* because we found that the FOIA provisions were not controlling with regard to matters of confidentiality raised in the course of civil discovery. 208 W.Va. at 575, 542 S.E.2d at 89. However, other courts have considered this issue and found that such records are "similar" to "personal files"[6] as set forth in the exemption provisions of the FOIA.

---

**5.** W.Va.Code § 51–4–2 provides:

> The records and papers of every court shall be open to the inspection of any person, and the clerk shall, when required, furnish copies thereof, except in cases where it is otherwise specially provided.

**6.** In researching cases from other jurisdictions, we observed that other states use the term "per-

sonnel" as opposed to "personal" when describing information that is exempted from disclosure as set forth in W.Va.Code § 29B–1–4(2). We believe, however, that this is a distinction without a difference, and therefore, we find cases from those states instructive to the extent that they address the issues in this appeal.

In *Gannett Co., Inc. v. James,* 86 A.D.2d 744, 447 N.Y.S.2d 781 (1982), the petitioner, a New York newspaper publisher, sought to inspect and in some instances copy complaints made to the Internal Affairs Divisions of the Rochester Police Department and the Monroe County Sheriff's Office alleging harassment or use of force by police officers. The petitioner claimed that the information was essential to public awareness of the conduct of law enforcement personnel in Monroe County. Like West Virginia, New York exempts certain categories of information from disclosure pursuant to its FOIA including personnel records. In concluding that the requested records fell within this exemption, the New York Supreme Court, Appellate Division, stated:

> Clearly, complaints made to the Internal Affairs Divisions of both the Rochester Police Department and the Monroe County Sheriff's Department . . . while handled by each in a slightly different fashion, fall within the statutory exemption . . . as personnel records used to evaluate performance. The fact that some complaints are unfounded and the officers are cleared of any wrongdoing is of no moment. The complaint subjects the officer to possible disciplinary sanctions and is thus an evaluative tool. In addition, the confidentiality afforded to those who wish it in reporting abuses is an important element in encouraging reports of possible misconduct which might not otherwise be made.

86 A.D.2d at 745, 447 N.Y.S.2d at 783.

Likewise, in *Connecticut Alcohol and Drug Abuse Commission v. Freedom of Information Commission,* 233 Conn. 28, 657 A.2d 630 (1995), the Supreme Court of Connecticut determined that an investigative file of a sexual harassment complaint by one employee of a state agency against a coworker constituted a "personnel or . . . similar" file as set forth in the exemption provisions of Connecticut's FOIA which parallels our statute. In so holding, the Connecticut Supreme Court stated:

> We see no basis for a determination that the investigation file at issue in this case is not a "similar file" as we interpret that term. While reports of incidents occurring

in the workplace are not "personnel files" per se, they may be similar to personnel files in that they may contain information that would ordinarily be considered in making personnel decisions regarding the individuals involved. Such reports would be functionally similar to information contained in the individuals "personnel files."

233 Conn. at 42, 657 A.2d at 638. We also conclude that the records requested by the appellee in this case fall within the parameters of W.Va.Code § 29B–1–4(2). Clearly, these records contain personal information which if disclosed would constitute an unreasonable invasion of privacy. Nonetheless, we must consider whether the public interest outweighs the privacy interests of the police officers thereby requiring disclosure of the information.

This Court has held that "[u]nder *W.Va. Code,* 29B–1–4(2) [1977], a court must balance or weigh the individual's right of privacy against the public's right to know." Syllabus Point 7, *Heckler.* In *Child Protection Group v. Cline,* 177 W.Va. 29, 350 S.E.2d 541 (1986), this Court had to balance these interests when a group of parents sought the release of medical records of their children's school bus driver. The parents requested the records after the school bus driver allegedly stopped his bus while en route with a full load of children and began to lecture the children on religion, telling them that "the world was coming to an end." Earlier that day, the school bus driver was seen "fooling around" with the brakes on the bus. The concerned parents made a FOIA request for the bus driver's medical records after he was allowed to return to his job after a brief suspension based on his physician's statement that his disorder would most likely not interfere with his work performance as long as he complied with the recommended medical regimen.

This Court ultimately concluded in *Cline* that the parents should be granted restricted access to the requested records. In reaching that conclusion, this Court held that:

> In deciding whether the public disclosure of information of a personal nature under W.Va.Code § 29B–1–4(2) (1980) would con-

stitute an unreasonable invasion of privacy, this Court will look to five factors:

1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.

2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.

3. Whether the information is available from other sources.

4. Whether the information was given with an expectation of confidentiality.

5. Whether it is possible to mould relief so as to limit the invasion of individual privacy.

Syllabus Point 2, *Cline.* Applying these factors to the case *sub judice*, we find that the public interest does not require the disclosure of the requested information.

Clearly, the disclosure of the information would result in a substantial invasion of privacy. As noted above, the request in this case would require the disclosure of all claims of misconduct no matter how egregious, unfounded, or potentially embarrassing. In addition, the information was obviously given with an expectation of confidentiality as the appellants' policy and procedural manuals require all investigative reports to be "treated with the strictest of confidence." Furthermore, the expectation of confidentiality is crucial to continued reports of possible misconduct. This Court is certainly mindful that "the lawfulness of police operations is a matter of great concern to the state's citizenry." *Maclay*, 208 W.Va. at 575, 542 S.E.2d at 90. However, our concern in *Maclay* that "compelled disclosure of police investigatory materials might result in 'fishing expeditions' and thereby encourage frivolous litigation" leads us to conclude that the public interest does not require the disclosure of the requested information. *Id.*

Moreover, we believe that some of the records requested are also exempt from disclosure pursuant to W.Va.Code § 29B–1–4(4) which exempts "records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement." Likewise, W.Va.Code § 29B–1–4(8) would exempt certain "internal memoranda" from disclosure. However, having found that W.Va. Code § 29B–1–4(2) exempts the information requested by the appellee from disclosure in this case, we need not address these exemptions today. Therefore, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on February 24, 2000, is reversed.

Reversed.

STARCHER, Justice, concurring:

(Filed July 24, 2001)

I write separately to clarify an important point about the FOIA request at issue in the instant case, and to emphasize what a narrow holding this Court's opinion in this case represents. I also write to explain further why this Court, which has issued many opinions that strongly support access to public records, has declined in the instant case to sustain the lower court's order that required compliance with the appellee's FOIA request.

First, it should be noted that there is some uncertainty with respect to exactly what the appellee's FOIA request was seeking. According to the circuit court's order that was appealed to this Court, the appellee's FOIA request asked for certain *information*, to-wit: (1) the *names* of any officers who were investigated or had a complaint made against them in any fashion, for any alleged conduct by the officer at work *or otherwise;* and (2) the *outcomes* of any such complaints or investigations.

Perhaps the circuit court's order did not correctly or fully quote the appellee's FOIA request. But from the language that is quoted in the circuit court's order, it appears that the appellee's request may not have been (technically) worded correctly. The request apparently requests *information*—but it should have requested *records.*

This is because the West Virginia FOIA grants access to most public records but the Act does not grant access to or "cover" *information* that is not already in existing public records. "The West Virginia Freedom of

Information Act, *W.Va.Code* § 29B–1–1 *et seq.* does not require the creation of public records." Syllabus Point 1, *Affiliated Const. Trades Foundation v. Regional Jail and Correctional Facility Authority,* 200 W.Va. 621, 490 S.E.2d 708 (1997).[1]

The lower court's order (and this Court's opinion) essentially disregard this important information/records distinction. Instead, the appellee's request is construed by both courts as asking, not for information, but for access to all of the police department's investigation and/or complaint *records* (this includes notes, letters, phone slips, etc.) regarding all of its current officers.

So construed, there is no question in my mind that the appellee's FOIA request was over broad, and that the circuit court erred in requiring that the police department comply with the request.

Under the circuit court's order, for example, the appellee could read, copy, and disseminate phone log notes that were made when an upset family member called and complained that a police officer was cheating in their marriage—or was drinking too much, or was gay, etc., etc.

Anyone can understand the potential for nosiness, mischief, and gross unfairness in allowing such an unfettered inspection of a public employee's personnel files. Moreover, what is sauce for the goose is sauce for the gander. If we were to approve of this kind of broad "any complaint" personnel file inspection for police department employees, nothing could bar a similar examination of the personnel files of teachers, DOH employees, etc.

The simple lesson of the Court's opinion in the instant case is that broad FOIA requests that seek the right to go through people's personnel files and similar records are going to receive close judicial scrutiny. This is not a bad lesson.

The Court's opinion in the instant case, however, does nothing to bar or undermine reasonable requests for access to *public records* to seek information about official misconduct, or other narrowly tailored requests that do not unreasonably affront legitimate personal privacy concerns. For example, had the appellee sought to inspect and copy documents alleging police use of excessive force, with names (at least initially) redacted, we would have had a different kettle of fish— and quite possibly a different result, if such a request had been refused.

I therefore concur in the Court's opinion and judgment.

1. *Cf. RGIS Inventory Specialists v. Palmer,* 209 W.Va. 152, 159, 544 S.E.2d 79, 86, 2001 WL 179830 (2001):

> In a case raising a similar issue, the Minnesota Supreme Court, in *Keezer v. Spickard,* 493 N.W.2d 614 (1992), concluded that the statutory term "data"—in a state "Data Practices Act"—did not apply to government-held information, until the information had been physically recorded in some fashion other than the mental impressions of the observer.
>
> In other words, government-held information did not become "data" for purposes of the Minnesota Data Practices Act, until a record of some sort that was based on the information, had been created.