752 S.E.2d 603

The CHARLESTON GAZETTE d/b/a Daily Gazette Co., Petitioner Below, Petitioner

v.

Colonel Jay SMITHERS, Superintendent of the West Virginia State Police, Respondent Below, Respondent.

No. 12–0811.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 2013.

Decided Nov. 26, 2013.

---

Rudolph L. DiTrapano, Esq., Sean P. McGinley, Esq., Robert M. Bastress, Esq., DiTrapano, Barrett & DiPiero, PLLC, for Petitioner.

1. Since the docketing of this appeal, Colonel Jay Smithers replaced Colonel Timothy Pack as the Superintendent of the West Virginia State Police. Pursuant to Rule 41 of the West Virginia Rules of Appellate Procedure, we automatically substitute Colonel Smithers for Colonel Pack in this action.

2. According to the Gazette's Complaint for Declaratory and Injunctive Relief, it sought
 (1) Quarterly, Bi–Annual and Yearly Reports of the Internal Review Board for the last five years, with the names of the employees identified by the Early Identification System redacted; (2) data provided to the Internal Review Board that was used to assist it in determining if subordinates of certain supervisors tend to be employees frequently identified by the internal review system; and (3) a copy of the central log of complaints maintained by the West Virginia State Police Professional Standards section.

3. The State Police, in its brief, indicated that it relied upon the following three statutory exemptions set forth in West Virginia Code § 29B–1–4(a):

John A. Hoyer, Esq., Virginia Grottendieck–Lanham, Esq., Assistant Attorneys General, West Virginia State Police, for the Petitioner Counsel for Respondent.

WORKMAN, Justice:

This case is before the Court upon the appeal of the Charleston Gazette ("Gazette") from an order entered May 16, 2012, by the Circuit Court of Kanawha County, West Virginia, denying the Gazette's motion for summary judgment and dismissing its complaint with prejudice. The Gazette filed this action against Colonel Jay Smithers,[1] Superintendent of the West Virginia State Police ("State Police") under the West Virginia Freedom of Information Act, West Virginia Code § 29B–1–1 to –7 (2012) ("FOIA"), seeking the disclosure of public records or documents[2] from the State Police concerning its internal review of complaints made against State Police officers.

The circuit court found that the information sought by the Gazette was statutorily exempt from disclosure pursuant to West Virginia Code § 29B–1–4(a)(2),(4) and (8).[3] The Gazette argues that the circuit court erred: 1) in finding that the disclosure of the requested records would result in an unreasonable invasion of privacy; 2) in finding that "the public interest does not require the

The following categories of information are specifically exempt from disclosure under the provisions of this article:
. . . .
 (2) Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance . . .;
. . . .
 (4) Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement;
. . . .
 (8) Internal memoranda or letters received or prepared by any public body.
W. Va.Code §§ 29B–1–4(a)(2),(4) and (8). These exemptions will be discussed in greater detail *infra* in Section III of this opinion.

disclosure" of the records requested; 3) in finding that "the public interest in disclosure of [the requested] records does not outweigh the governmental interest in confidentiality;" 4) in relying on administrative regulations to justify nondisclosure; 5) in refusing to order disclosure with names redacted and in finding "there is no way to mould the relief so as to limit the invasion of individual privacy;" 6) in concluding that "in some cases the information sought contains, 'records of law enforcement agencies that deal with the detection and investigation of crime and internal records and notations of such law enforcement agency which are maintained for internal use in matters relating to law enforcement;'" and 7) in concluding that the requested records were exempt as "internal memoranda or letters received or prepared by any public body." After a thorough review of the parties' briefs and oral arguments, the appendix record, and all other matters submitted before the Court, we reverse the decision of the circuit court regarding its determination that none of the information sought by the Gazette was subject to disclosure and we remand the case to

the circuit court for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

■ At the outset we note that because the specific information sought was never reviewed by the circuit court and is not part of the record on appeal (other than the description of the information set forth in the legislative rule entitled "West Virginia State Police Professional Standards Investigations, Employee Rights, Early Identification System, Psychological Assessment and Progressive Discipline," [4] West Virginia Code of State Rules §§ 81–10–1 to –11 (2008),[5] and the Gazette's FOIA requests, which mirrored the legislative language) this Court is unable to discern what is actually contained in the documents sought by the Gazette.[6]

By letters[7] dated May 25, 2010, the Gazette, through its reporter, Gary A. Harki, requested records pursuant to the FOIA from the State Police that were generated pursuant to West Virginia Code of State Rules § 81–10–1 to –11. The State Police provided the Gazette with some of the documents sought;[8] however, the State Police

4. The legislative rule, West Virginia Code of State Rules § 81–10–1 to –11, that is at the heart of the Gazette's FOIA requests was developed by the State Police at this Court's direction. In *State ex rel. Billy Ray C. v. Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993), we ordered the Superintendent of the State Police to promulgate formal written investigation procedures to handle complaints of misconduct against state police officers. *See id.* at 505, 438 S.E.2d at 848, Syl. Pt. 4 ("Implicit within the Superintendent of the West Virginia Division of Public Safety's mandatory duty to investigate allegations of misconduct under W. Va.Code, 15–2–21 (1977), there is a duty to promulgate formal, written investigation procedures. These procedures should outline (1) how a citizen may notify the Superintendent of alleged misconduct by a State Police officer, and (2) the specific procedure to be followed to ensure that a thorough investigation is conducted by an impartial and neutral party. These procedures also should require that a report of the investigation be given to the Superintendent on which to base his decision."). The development of a uniform method of handling reports of state police misconduct was necessary to foster the public's trust and confidence in the integrity of the State Police, including all of its employees, and its procedure for investigating complaints filed against state police officers and employees. "A citizenry's full and fair of assessment of a police department's internal investigation of its officer's [sic] actions promotes the core value of

trust between citizens and police essential to law enforcement and the protection of constitutional rights." *Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester*, 58 Mass.App.Ct. 1, 787 N.E.2d 602, 607 (2003).

5. According to West Virginia Code of State Rules § 81–10–1.1, "[t]his legislative rule explains the processes employed by the West Virginia State Police in dealing with allegations of employee misconduct, enhanced reporting for use of force incidents, progressive employee discipline, and internal systems aimed at evaluating and addressing employees suffering from either job-related or non-job[-]related stress."

6. We further note that the parties deal with the three requests collectively as they do not attempt to separate or distinguish the information that is the subject of the FOIA requests.

7. A letter dated June 2, 2010, from John Hoyer of the West Virginia State Police to the Gazette reporter references three FOIA requests dated May 25, 2010; however, only two letters containing FOIA requests from the Gazette reporter to the State Police are in the record.

8. The State Police provided the Gazette with the following information requested pursuant to FOIA:

denied the following requests, relying primarily upon West Virginia Code of State Rules § 81–10–6.2 [9] and West Virginia Code § 29B–1–4(a)(2) for each of the FOIA requests: [10]

> A copy of the data provided to the Internal Review Board that is used to assist that body in determining if subordinates of certain supervisors tend to be employees frequently identified by the internal review system, as directed by Legislative Rule 81–10–9.5[;]
>
> A copy of the central log of complaints maintained by the West Virginia State Police Professional Standards Section as directed by Legislative Rule 81–1–3.3[;]
>
> All Quarterly, Bi–Annual and Yearly Reports of the Internal Review Board for the last five years, with the names of the employees identified by the Early Identification System redacted.[11]

The language in the Gazette's FOIA requests was taken directly from the legislative rule at issue in this case. For instance, the Gazette's request for a copy of the central log of complaints is taken from the language of West Virginia Code of State Rules § 81–

> A copy of the information available to the general public regarding the procedures to be followed in registering complaints against the State Police or its employees as directed by Legislative Rule 81–10–3.7.
> A blank copy of the Personnel Complaint Form required in Legislative Rule 81–10–5.2.
> A list of the members of the Superintendent-appointed Internal Review Board as directed in Legislative Rule 81–10–9.1.
> A copy of the Annual Statistical Report concerning the Professional Standards Section's activities as directed by Legislative Rule 81–10–3.5.

9. West Virginia Code of State Rules § 81–10–6.2 provides, in pertinent part, that: "[d]ocuments, evidence and other items related to complaints, internal investigations, internal inquiries and/or contained in case files shall not be released, disseminated or disclosed, except by the direction of the Superintendent or by order of a court with competent jurisdiction." *See infra* at p. 620.

10. *See supra* n. 3. The State Police also referenced the exemption set forth in West Virginia Code § 29B–1–4(a)(4) relating to the FOIA requests regarding the quarterly, bi-annual and yearly reports. *See supra n. 3.* These exemptions will be discussed more fully in Section III of this decision *infra*.

10–3.3, which provides that all complaints,[12] both external (by someone other than an employee) and internal, made against any employee of the State Police, not just State Police officers, must be recorded "in a central log and assigned an individual case number." [13] (Footnote added). Further, the Gazette requested the release of information specific to the "Early Identification System." The "Early Identification System" is defined in West Virginia Code of State Rules § 81–10–2.8 as "[a] system designed to analyze data pertaining to complaints [14] lodged against employees [15] and employee uses of force in an effort to identify employees who may be experiencing stress or other problems which may adversely affect job performance." (Footnotes added). The Superintendent appoints an Internal Review Board "to review and evaluate employees who are identified by the system." *Id.* § 81–10–9.1. Under the rule, "[e]mployees who have received two or more complaints (internal and/or external) or who have been involved in three or more use of force incidents during a three-month period are subject to review by the Internal Review Board." *Id.*

11. The last request concerning quarterly, bi-annual and yearly reports produced by the Internal Review Board naming employees as mentioned in Legislative Rule 81–10–9.1, further requested that the report "should include but is not limited to information regarding the number of external citizen complaints, internal complaints or use of force incidents for each employee listed in the report[.]"

12. The complaints include not only allegations of misconduct, but also "[c]omplaints involving the Americans with Disabilities Act, Age Discrimination in Employment Act, ... [and] the Civil Rights Act." W. Va.C.S.R. § 81–10–3.3.

13. Under the legislative rule, every complaint has a case file and an internal investigation report. *See, e.g.,* W. Va.C.S.R. § 81–10–8.12 and 8.13.

14. During oral argument before the Court, counsel for the State Police described the central log as a fluid document containing approximately 1,267 allegations against State Police employees at the current time.

15. An "employee" is defined as "[a]ny employee of the West Virginia State Police." W.Va.C.S.R. § 81–10–2.8.

As part of the review, "[t]he Section [referring to the Professional Standards Section of the West Virginia State Police] shall ... provide data to the Internal Review Board that will assist that body in determining if subordinates of certain supervisors tend to be employees frequently identified by the system." *Id.* § 81–10–9.5. The system "shall produce quarterly, bi-annual, and yearly reports for review by the Internal Review Board naming employees who have entered the system based on external citizen complaints, internal complaints, or use of force incidents." *Id.* § 81–10–9.1. Based upon the Board's review, the Board may decide that no further action is warranted or

> that the employee be referred to the employee assistance program, that the employee be referred for remedial training, or that the employee be subject to review by the employee's immediate supervisor to attempt to determine the reasons for the employee's conduct or any circumstances that may have contributed to the conduct and evaluate the employee's current performance.

*Id.* § 81–10–9.1.

Regarding the annual report referenced above,

> [t]he annual report shall serve as a secondary system to the system's quarterly report. The report shall contain names of all employees entered into the system during the preceding year who have either received four or more internal and/or external complaints, or who have been involved in six or more use of force incidents. The analysis shall serve to identify those employees who do not necessarily meet the criteria for review based on the quarterly report, but who exhibit a pattern of conduct over a longer period of time that warrants review.

*Id.* § 81–10–9.3.[16] Two of the Gazette's FOIA requests sought the data provided to the Internal Review Board that was "used to

assist that body in determining if subordinates of the certain supervisors tend to be employees frequently identified by the internal review system[,]" as set forth in West Virginia Code of State Rules § 81–10–9.5, as well as the quarterly, bi-annual and yearly or annual reports produced by the system for the last five years "with the employees' names identified by the Early Identification System redacted." *See id.*

On November 3, 2010, the Gazette filed a complaint under the FOIA for declaratory judgment and injunctive relief in the Circuit Court of Kanawha County regarding the three FOIA requests set forth *supra,* after the State Police had refused to provide the information sought. The State Police answered the complaint and, on April 18, 2011, the Gazette moved for summary judgment. The circuit court conducted a hearing on the summary judgment motion and by order entered May 16, 2012,[17] the court denied the Gazette's motion for summary judgment. In its order, the circuit court found that "[t]he Officer in Charge of the Professional Standards Section shall 'ensure the confidentiality of all documents and reports relating to the investigation of any complaint through strict control of the Section's files.' 81 CSR 10.3.3." The circuit court also concluded that "[b]eginning with the actual complaint through the investigation and conclusion of the matter all investigative materials are to be treated with the strictest confidence. 'The expectation of confidentiality is crucial to continued reports of possible misconduct.' *Manns v. City of Charleston Police Department,* 209 W.Va. 620, 626, 550 S.E.2d 598, 604 (2001)." The circuit court ultimately dismissed the complaint with prejudice, concluding that:

> [e]ach of the documents at issue in this matter are exempt from disclosure pursuant to the West Virginia Freedom of Information Act, specifically the exemptions contained in W. Va.Code § 29B–1–4(2), (4) and (8). The requested records are compi-

---

**16.** Other than the language of the legislative rule set forth *supra,* there is no other language or information precisely setting forth what is contained in the quarterly report versus what is contained in the annual report. The lack of any specific information on what is contained in

these reports, together with their absence from the record, further supports the need for in camera review as discussed herein.

**17.** There is no transcript of the September 1, 2011, hearing in the appendix record.

lation of information contained in Professional Standards files which contain personal information, the disclosure of which has been determined to constitute an unreasonable invasion of privacy. The documents requested also contain "internal memoranda or letters received or prepared by any public body." Some of the documents may also contain records of law enforcement agencies that deal with the detection and investigation of crime and internal records and notations of such law enforcement agency which are maintained for internal use in matters relating to law enforcement.

This order forms the basis for the instant appeal.

## II. Standard of Review

 This Court's well-established standard of review for summary judgment orders is set forth in syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), as follows: "A circuit court's entry of summary judgment is reviewed *de novo.*" Further, because this case requires an interpretation of West Virginia's FOIA, we recognize that the Court has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). With these standards in mind, we now consider the parties' arguments.

## III. Discussion

This case presents the Court with the issue of whether certain information gathered by the West Virginia State Police for purposes of dealing with allegations of misconduct and incidents of use of force by state police officers is subject to disclosure as public records pursuant to the FOIA. The answer to the issue requires an examination of whether the

various exemptions relied upon by the State Police preclude disclosure of the information sought by the Gazette.

 As a backdrop, the Legislature, in enacting West Virginia's FOIA, intended to liberally allow the disclosure of public records [18] as unequivocally expressed in West Virginia Code § 29B-1-1:

Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the State of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

This Court recognized the liberal construction to be used in favor of disclosure of public documents under the FOIA in syllabus point four of *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985), wherein we held that "[t]he disclosure provisions of this State's Freedom of Information Act, *W. Va.Code,* 29B-1-1 *et seq.,* as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. *W. Va. Code,* 29B-1-1 [1977]." Further, the Court stated in *Ogden Newspapers, Inc. v. City of*

---

**18.** The parties do not dispute that the information sought by the Gazette encompasses "public records," as that term is defined in West Virginia Code § 29B-1-2(4), because the information constitutes "any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body." Further, there is no dispute that the State Police

is a "public body" which is defined as: "every state officer, agency, department, including the executive, legislative and judicial departments, division, bureau, board and commission; ... and any other body which is created by state or local authority or which is primarily funded by the state or local authority." *Id.* § 29B-1-2(3).

*Williamstown,* 192 W.Va. 648, 453 S.E.2d 631 (1994), that

> [t]he West Virginia Freedom of Information Act was adopted by the legislature in 1977. The purpose of the legislation is to open the workings of government to the public so that the electorate may be informed and retain control. *W. Va.Code* 29B–1–1 [1977]. In order to facilitate this purpose, this Court has stated on numerous occasions that the disclosure provisions of the FOIA are to be liberally construed. *Daily Gazette Co. v. Caryl,* 181 W.Va. 42, 380 S.E.2d 209 (1989); *4–H Road Community Ass'n v. WVU Foundation, Inc.,* 182 W.Va. 434, 388 S.E.2d 308 (1989); *Queen v. West Virginia Univ. Hosps., Inc.,* 179 W.Va. 95, 365 S.E.2d 375 (1987).

*Ogden,* 192 W.Va. at 650, 453 S.E.2d at 633. Finally, "[t]he party claiming the exemption from the general disclosure requirement under West Virginia Code § 29B–1–4 has the burden of showing the express applicability of such exemption to the material requested." *Queen,* 179 W.Va. at 97, 365 S.E.2d at 377, Syl. Pt. 7; *accord* Syl. Pt. 2, *Daily Gazette Co., Inc. v. W. Va. Dev. Office,* 198 W.Va. 563, 482 S.E.2d 180 (1996).

### A. Invasion of Privacy Exemption

■ The exemption most strongly relied upon by the State Police for all three FOIA requests made by the Gazette is set forth in West Virginia Code § 29B–1–4(a)(2) (sometimes referred to as the "invasion of privacy exemption") and provides that the following category of information is "specifically exempt" from disclosure under the FOIA:

> Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would

constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: Provided, That nothing in this article shall be construed as precluding an individual from inspecting or copying his or her own personal, medical or similar file[.]

*Id.*

The Gazette, relying upon this Court's liberal construction in favor of disclosure of documents under the FOIA,[19] further argues that other jurisdictions "consistently hold[ ] the public interest in records of complaints against police officers far outweighs any privacy interest under FOIA (which most courts hold is 'slight' for public officials conduct while working)." The Gazette contends that "[v]irtually all other courts addressing whether a police officer has a privacy interest in records of the officer's on-the-job activities have reached the same conclusion ... police officers have no privacy interest in such records."

In contrast, the State Police, relying upon this Court's decision in *Manns v. City of Charleston Police Department,* 209 W.Va. 620, 550 S.E.2d 598 (2001) and *Child Protection Group v. Cline,* 177 W.Va. 29, 350 S.E.2d 541 (1986), assert that the documents sought to be disclosed contain "information of a personal nature such as that kept in a personal, medical or similar file" like the information this Court found to be exempt from disclosure in *Manns.* The State Police, therefore, argue that the information now sought by the Gazette should be exempt from disclosure under West Virginia Code § 29B–1–4(a)(2).

The Court's examination of the authorities from other jurisdictions [20] around the country

---

**19.** *See Ogden,* 192 W.Va. at 654, 453 S.E.2d at 637 (quoting *Hechler,* 175 W.Va. at 445, 333 S.E.2d at 810) (" 'the *fullest responsible disclosure,* not confidentiality, is the dominant objective of the Act.' ").

**20.** Our examination of other jurisdictions focuses upon state law. Regarding the federal authorities cited by the Gazette in support of its argument, this Court recognized in *Cline:*

> It must be kept in mind, however, that the statutes differ in an important regard. Under the United States Code, private information

should be disclosed unless its disclosure would "constitute a clearly unwarranted invasion of personal privacy." The West Virginia Code, on the other hand, exempts disclosure if the "public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance." While the burden of proof is always on the agency resisting disclosure, the burden is different in the two codes. The Federal Code unambiguously favors disclosure of personal information with the resisting party hav-

reveals that there is a split of authority on the issue of whether similar information is exempt from or subject to disclosure under state law akin to our FOIA.[21]

The inherent flaw in the Gazette's position that courts from around the country routinely allow disclosure of the information it now seeks in response to FOIA-type requests is that the Gazette does not differentiate between policy-based decisions and those predicated upon the language of a specific state statute. For instance, some states have statutorily exempted the information from being disclosed,[22] while other states have legislation expressly allowing it to be disclosed.[23] Fur-

ing to show clear evidence of an unwarranted invasion of personal privacy. The West Virginia Code, with some ambiguity, favors nondisclosure of personal information unless public interest clearly requires disclosure. The simplest explanation of these differences is as follows: If the scales weigh heavily in favor of disclosure, both codes require disclosure; if the scales weigh heavily in favor of nondisclosure, both codes require nondisclosure; but, if the scales weigh even or near even, the Federal Code favors disclosure while the West Virginia Code favors nondisclosure. 177 W.Va. at 34, 350 S.E.2d at 545 (footnote omitted).

21. Undeniably, some jurisdictions have recognized a public interest in information such as that sought by the Gazette. *See Obiajulu v. City of Rochester*, 213 A.D.2d 1055, 625 N.Y.S.2d 779, 780 (1995) (determining that "[d]isciplinary files containing disciplinary charges, the agency determination of those charges, and the penalties imposed . . . are not exempt from disclosure under . . . [New York's Freedom of Information Law]; 'personal and intimate details of an employee's personal life' are exempt[.]"); *Direct Action for Rights and Equality v. Gannon*, 713 A.2d 218, 224 (R.I.1998) (recognizing that "a rule [in Rhode Island] has evolved that permits the disclosure of records that do not specifically identify individuals and that represent final action[,]" and further determining that police civilian complaint reports were subject to disclosure with identifying information redacted whenever final action occurred); *see also Cox v. N.M. Dept. Of Pub. Safety*, 148 N.M. 934, 242 P.3d 501, 507 (N.M.Ct.App.2010) (finding that police officer "does not have a reasonable expectation of privacy in a citizen complaint because the citizen making the complaint remains free to distribute or publish the information in the complaint in any manner the citizen chooses").

22. *See, e.g.,* Cal.Penal Code § 832.7(a) (West 2008) ("Peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office."); Neb. Rev.Stat. § 84–712.05 (2008) (providing that "[r]ecords developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training, . . ." are exempt from disclosure to the public). Other states have statutes which provide that information concerning police misconduct is confidential until the investigation is complete or unless the public interest in disclosing the information outweighs the public interest in not disclosing it. *See* Me.Rev.Stat. Ann. tit. 30–A § 503 (2011) (establishing "[c]omplaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action[,]" as well as "[i]nvestigations of deadly force or physical force by law enforcement officer[,]" as "confidential and not open to public inspection[,]" until either "the final written decision relating to" a disciplinary action, if taken, is issued or in the case of deadly or physical force, "regardless of whether disciplinary action is taken, the findings of any investigation into the officer's conduct" in which both instances provide for the loss of confidentiality); Okla. Stat. Ann. tit. 51, § 24A.7 (B)(4) (2008) (making certain personnel records available for public inspection, including "[a]ny final disciplinary action resulting in loss of pay, suspension, demotion of position, or termination."); *see also* Mich. Comp. Laws § 15.243(s) (2009) (exempting from public disclosure "personnel records of law enforcement agencies" as well as public documents identifying or "provid[ing] a means of indentifying a person as a law enforcement officer, agent or informant" within the statutory preface of "[u]nless the public interest in disclosure outweighs the public interest in nondisclosure").

23. *See State of Hawaii Org. of Police Officers v. Soc'y of Prof'l Journalists–Univ. of Hawaii Chapter*, 83 Hawai'i 378, 927 P.2d 386, 404–05 (1996) (applying Hawaii Revised Statute § 92F–14(b)(4) and determining that "after a public employee has exhausted any nonjudicial grievance procedures available to him or her and charges of employment-related misconduct have been sustained, resulting in suspension or discharge, the public interest in disclosure of that person's

ther, some of the Gazette's authorities include courts which have found the information of police misconduct discoverable in the context of a civil or criminal litigation, not pursuant to a request for information under a FOIA or a FOIA-like statutory scheme.[24]

A review of authority from other jurisdictions, as well as the fact that there is little consistency in state FOIA statutes, reflects that there is no bright-line rule to guide this Court in ascertaining whether the subject FOIA requests seek information that should be exempt from disclosure under West Virginia Code § 29B–1–4(a)(2), the invasion of privacy exemption.

■ We, therefore, turn to our own precedent and begin with our holding in *Hechler*: "The primary purpose of the invasion of privacy exemption to the Freedom of Information Act, *W. Va. Code*, 29B–1–4(2) [1977], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." 175 W.Va. at 437, 333 S.E.2d at 802, Syl. Pt. 6. Further, "[u]nder *W. Va. Code*, 29B–1–4(2) [1977], a court must balance or weigh the individual's right of privacy against

the public's right to know." 175 W.Va. at 437, 333 S.E.2d at 802, Syl. Pt. 7.

■ In *Cline*, we expanded upon the type of balancing test to be used in ascertaining whether the public disclosure of information under the FOIA would constitute an unreasonable invasion of privacy as follows:

In deciding whether the public disclosure of information of a personal nature under W. Va. Code § 29B–1–4(2) (1980) would constitute an unreasonable invasion of privacy, this Court will look to five factors:

1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.

2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.

3. Whether the information is available from other sources.

4. Whether the information was given with an expectation of confidentiality.

5. Whether it is possible to mould relief so as to limit the invasion of individual privacy.

name and information regarding the misconduct outweighs the employee's privacy interest."). *See also* Tenn.Code Ann. § 10–7–503(c)(1) (2012) ("Except as provided in § 10–7–504(g), all law enforcement personnel records shall be open for inspection as provided in subsection (a)...."); *compare with* Tenn.Code Ann. § 10–7–504(g)(1)(A)(i) and (D) (2012) (allowing for the redaction of "personal information [which] shall include the officer's residential address, home and personal cellular telephone number; place of employment; name, work address and telephone numbers of the officer's immediate family; name, location, and telephone number of any educational institution or daycare provider where the officer's spouse or child is enrolled[,]" where the chief law enforcement officer provides reason for not disclosing).

**24.** *See Denver Policemen's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 436 (10th Cir.1981) (ordering discovery of police investigative files in prosecution of defendant for assaulting police officer); *Coughlin v. Westinghouse Broadcasting and Cable, Inc.,* 603 F.Supp. 377, 390 (E.D.Pa.), *aff'd* 780 F.2d 340 (3rd Cir.1985) (stating in a defamation case that "[a] police officer's on-the-job activities are matters of legitimate public interest, not private facts."); *Rawlins v. Hutchin-*

son *Publ'g Co.,* 218 Kan. 295, 543 P.2d 988, 993 (1975) (finding no invasion of privacy where newspaper published account of police officer's alleged misconduct in office because facts did not concern the private life of the officer and "a truthful account of misconduct in office cannot form the basis of an action for invasion of privacy."); *see also* Syl. Pts. 2 and 3, *Maclay v. Jones,* 208 W.Va. 569, 542 S.E.2d 83 (2000) (involving a civil action where discovery was sought in an internal affairs investigation of complaints filed against a state trooper as well as the trooper's personnel file and holding that "[t]he provisions of this state's Freedom of Information Act, West Virginia Code §§ 29B–1–1 to –7 (1998), which address confidentiality as to the public generally, were not intended to shield law enforcement investigatory materials from a legitimate discovery request when such information is otherwise subject to discovery in the course of civil proceedings[,]" and that "[r]ecords and information compiled by an internal affairs division of a police department are subject to discovery in civil litigation of a police department arising out of alleged police misconduct if, upon an *in camera* inspection, the trial court determines that the requesting party's need for the material outweighs the public interest in maintaining the confidentiality of such information.").

177 W.Va. at 30–31, 350 S.E.2d at 542, Syl. Pt. 2.

Following *Cline,* in *Manns,* this Court was presented with an arrestee who had been charged with several offenses including battery on a police officer and resisting arrest. 209 W.Va. at 622, 550 S.E.2d at 600. The arrestee alleged that the police officer who arrested her used excessive force in carrying out the arrest. The police department initiated an internal investigation, and also requested the Federal Bureau of Investigation to conduct its own investigation. Both investigations exonerated the officer. *Id.*

The arrestee sought to institute a federal civil rights action and, as part of her pre-suit investigation, requested the city and its police chief to provide various documents including internal investigation documents pursuant to the FOIA. *Id.* When the city and its chief only produced some of the documents sought and objected to the disclosure of the remaining documents, citing the same exemption at issue herein, *see* West Virginia Code § 29B–1–4(a)(2), the arrestee instituted an action to compel disclosure of the remaining documents. 209 W.Va. at 622 and 624, 550 S.E.2d at 600 and 602. The information at issue in *Manns* included the following:

 a. The names of every officer against whom a complaint has been made, or who the Charleston Police Department has investigated on their own, regarding that officer's behavior while in the course of employment or otherwise;

 b. The names of every officer against whom a civil or criminal complaint has been filed regarding their behavior while in the course of employment or otherwise;

 c. In respect to subpart "a" and "b" please state the outcome of said complaints or investigations.

*Id.* at 622, 550 S.E.2d at 600. Additionally, the arrestee sought information about the officer who had arrested her, including whether any complaints had been filed against the officer, the substance of those complaints, and the disposition of those complaints. *Id.* at 622–23, 550 S.E.2d at 600–01. The circuit court determined that the arres-

tee was entitled to the documents that had been requested, except the limited number of documents to which there was a valid internal memoranda claim.[25] *Id.* at 622, 550 S.E.2d at 600.

On appeal, this Court, in summary fashion, applied the test set forth in *Cline* and determined that "the public interest does not require the disclosure of the requested information" and "the disclosure of the information would result in a substantial invasion of privacy." *Id.* at 626, 550 S.E.2d at 604. The Court further stated that

 the request in this case would require the disclosure of all claims of misconduct no matter how egregious, unfounded, or potentially embarrassing. In addition, the information was obviously given with an expectation of confidentiality as the appellants' policy and procedural manuals require all investigative reports to be "treated with the strictest of confidence." Furthermore, the expectation of confidentiality is crucial to continued reports of possible misconduct.

*Id.* Thus, the Court reversed the circuit court, determining that the invasion of privacy exemption applied to the records sought. *Id.*

Given the lack of any meaningful analysis in *Manns,* as well as the lack of any new law enunciated therein, the decision has limited application to the case at bar. Rather, in order to resolve whether the information sought by the Gazette is exempt from disclosure under the invasion of privacy exemption, West Virginia Code § 29B–1–4(a)(2), we turn to our well-established law first enunciated in *Cline* and apply the five-factor test set forth therein to the information sought in this case.

**1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.**

The Gazette contends that because there is no "legally cognizable privacy interest in public records of . . . [police officers'] on-the-job activities" the invasion of privacy exemption does not apply. In contrast, the State

---

**25.** The circuit court was referring to the statutory exemption for "[i]nternal memoranda or let-

ters received or prepared by a public body[.]" *See* W. Va.Code § 29B–1–4(a)(8).

Police rely upon the *Manns* decision in arguing that there is a substantial invasion of privacy.

■ As this Court stated in *Cline*, we must first determine "whether disclosure would result in an invasion of privacy and, if so, how serious." 177 W.Va. at 32, 350 S.E.2d at 543. This inquiry necessarily involves a two-part test:

> The first part is whether there is a substantial invasion of privacy. Private information is something which affects or belongs to private individuals as distinct from the public generally. *See Black's Law Dictionary* 1076 (5th ed.1979). The invasion into the private information must be substantial. Information of a non-intimate or public nature may be disclosed.

177 W.Va. at 32, 350 S.E.2d at 543.

Internal affairs complaints typically range from those made against an officer involving misconduct that occurs while the officer is on the job to those complaints made against an officer for misconduct that occurs while he is off duty, such as a domestic violence claim. These types of records may also contain information that is extremely personal to the officer, such as his or her identity, as well as home addresses and phone numbers. *See Bainbridge Island Police Guild v. City of Puyallup*, 172 Wash.2d 398, 259 P.3d 190, 198 (2011) (holding that police officer "has a right to privacy in his identity, regardless of the media coverage stemming from the production of . . . [the city's criminal investigation report].").

■ The release of information involving alleged misconduct that occurs while the state police officer is not on the job and not acting in any official capacity as a state police officer could include information that is personal which could constitute an unreasonable invasion of privacy.[26] However, this Court holds that conduct by a state police officer while the officer is on the job in his or her official capacity as a law enforcement officer and performing such duties, including but not limited to, patrolling, conducting arrests and searches, and investigating crimes does not fall within the Freedom of Information Act invasion of privacy exemption set forth in West Virginia Code § 29B-1-4(a)(2) (2012). Notwithstanding this recognition, this is but one of the Court's inquiries in determining whether the information sought is subject to the invasion of privacy exemption.

**2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.**

■ We now "look[ ] for the extent or value of the public interest, purpose or object of the individuals seeking disclosure." *Cline*, 177 W.Va. at 33, 350 S.E.2d at 544. The Court again uses a twofold test: we first evaluate "the value of the public interest. The interest may be pecuniary, or the public may have an interest because their legal rights or liabilities are affected. It does not mean anything so narrow as mere curiosity." *Id.* The second test "concerns the purpose for which the information is sought. If the information is sought to provide for something which would be useful to the public, then the courts will weigh this favorably. To the contrary, where a misuse of information may result, the courts are wary of ordering disclosure." *Id.* (citations omitted).

The Gazette, relying upon a decision reached by the Supreme Court of Washington in *Bainbridge Island Police Guild*, argues that "the public does have a legitimate interest in how a police department responds to and investigates such an allegation [referring to alleged sexual misconduct][27] against an officer." 259 P.3d at 198 (footnote added). Thus, the Gazette maintains that "the public interest is in the important issue of 'public accountability'. . . . If investigations of alleged police misconduct and their outcomes are done entirely in secret, as here, there is no public accountability whatsoever." *See Bainbridge Island Police*, 259 P.3d at 199

---

**26.** Whether the alleged misconduct, even in such a situation, would bear upon the officer's fitness to serve is a fact-driven analysis that could have an impact on the FOIA balancing test. This is an issue that is not before the Court at this time.

**27.** The alleged sexual misconduct in *Bainbridge Island Police Guild* involved an allegation of sexual assault that occurred on the job, during the course of a traffic stop. 259 P.3d at 192–93.

("Because the nature of the investigations is a matter of legitimate public concern, disclosure of that information is not a violation of a person's right to privacy."); *see also Daily Gazette Co. v. Comm. on Legal Ethics of the W. Va. State Bar,* 174 W.Va. 359, 367 n. 17, 326 S.E.2d 705, 713 n. 17 (1985) (dealing with release of information concerning investigation of attorney misconduct pursuant to a disciplinary proceeding and stating that "[a]ccountability for *all* decisions can only bolster confidence in this self-regulatory process, and at the same time, increase the likelihood of receiving information concerning attorney misconduct."). In contrast, the State Police assert that "[i]n reviewing articles written prior to the FOIA requests it is apparent that Petitioner sought disclosure to identify specific individuals who have been accused of misconduct in order to write newspaper articles detailing the misconduct."

■ Clearly some of the information at issue has value to the public and the public is entitled to the information. In determining that the public is entitled to some of the information sought, we give little weight to the State Police's position that the Gazette's purpose in seeking the information at issue— to write newspaper articles about police misconduct—is "a misuse of information" that this Court should not allow. *Cline,* 177 W.Va. at 33, 350 S.E.2d at 544. In fact, because the dissemination of public information by the press is an important cornerstone of a vivacious democracy, this factor weighs in the Gazette's favor. The press has a vital role in disseminating to the public the type of information at issue in this case. As was noted in *Hinerman v. Daily Gazette Co., Inc.,* 188 W.Va. 157, 423 S.E.2d 560 (1992) (Miller, J., dissenting), a case involving defamation, "[t]he freedom of the press is one of the most hallowed protections contained in our Constitution. It allows the press to act as the watchdog of our citizens and to report on, criticize, and otherwise bring to public attention the actions and conduct of the government." *Id.* at 182, 423 S.E.2d at 585.

### 3. Whether the information is available from other sources.

The Court readily dispenses with this third factor insofar as both parties agree that the information sought by the Gazette is not available from any other source. *See Cline,* 177 W.Va. at 33, 350 S.E.2d at 544.

### 4. Whether the information was given with an expectation of confidentiality.

This factor from *Cline* regarding the information being given with the expectation of privacy involves a more complicated analysis. *See id.* As previously mentioned, pursuant to the Court's directive in *Skaff,* a legislative rule was promulgated setting forth how the West Virginia State Police must deal with allegations of employee misconduct and the reporting thereof. *See* W. Va.C.S.R. § 81–10–1 to –11. It is significant for the purposes of this opinion and the interplay between the legislative rule and FOIA that throughout the process associated with filing a complaint under the method set forth in West Virginia Code of State Rules § 81–10–1 to –11 there is repeated express language regarding confidentiality. For instance, West Virginia Code of State Rules § 81–10–3.3 provides that "[t]he OIC [Officer-in-charge] shall ensure the confidentiality of all documents and reports relating to the investigation of any complaint through strict control of the Section's files." Further, "[i]nvestigators assigned to internal investigations or inquiries shall report directly to the OIC, and shall not discuss the investigation with anyone not assigned to the Section or specifically authorized by the OIC or Superintendent to receive the information." *Id.* § 81–10–4.2. Additionally, "[e]mployees taking complaints shall not make or retain any copies of the Personnel Complaint Form or any related documents other than those kept in the normal course of business in order to ensure the confidentiality of the investigative process." *Id.* § 81–10–5.6. Pursuant to West Virginia Code of State Rules § 81–10–6.2 "[d]ocuments, evidence, and other items related to complaints, internal investigations, internal inquiries and/or contained in case files shall not be released, disseminated or disclosed, except by the direction of the Superintendent or by order of a court with competent jurisdiction." *Id.*

The focus on confidentiality of the investigative rule is emphasized further by the limited circumstances in which information may be made public. For example, the rule provides that "[t]he OIC shall prepare an annual statistical report concerning the Section's activities which shall be available to employees and members of the public." *Id.* § 81–10–3.5. Also, "[t]he Section shall make information available to the general public regarding the procedures to be followed in registering complaints against the State Police or its employees." *Id.* § 81–10.3.7.[28] Moreover, West Virginia Code of State Rules § 81–10–8.12 provides:

> As part of an internal investigation or inquiry, the State Police shall, to the degree possible, protect an employee from exposure to the news media with or without the employee's written consent. The State Police shall not, pursuant to an internal investigation or inquiry, release an employee's home address, home telephone number, or photograph without the employee's consent.

Finally, an employee facing pending discipline who requests a copy of the case file

> shall sign a receipt indicating that he or she had taken possession of the case file material, and execute a confidentiality agreement with the State Police agreeing to not disclose any of the material contained in the case file for any purpose other than to defend himself or herself. An employee who violates this procedure may be subject to disciplinary action.

*Id.* § 81–10–8.14.

Relying upon *State ex rel. Billy Ray C. v. Skaff*, 194 W.Va. 178, 459 S.E.2d 921 (1995) ("*Skaff II*"),[29] the Gazette argues that "regardless of what the administrative regulations may say concerning public access to records generated in the investigation of complaints, public access to such records,'would be controlled by the West Virginia Freedom of Information Act.' " In *Skaff II*, regarding an objection raised relating to the "public access to various internal documents generated in investigation of complaints[,]" this Court said: "We decline to address this general claim as obviously, *this issue would be controlled by the West Virginia Freedom of Information Act*, and we decline to give any general advisory opinion in this area." *Id.* at 183, 459 S.E.2d at 926 (citation omitted) (emphasis added). This language, while not the subject of a syllabus point, suggests at least indirectly that the Court did not intend to permit the administrative rules to trump the FOIA.

Clearly, the information sought to be disclosed in the present case was intended by the legislative rule to be confidential. The issue which we must therefore now directly confront is whether the rule and the FOIA can be reconciled; and if not, which governs the issue presented in this appeal.

This Court held in syllabus point two of *West Virginia Health Care Cost Review Authority v. Boone Memorial Hospital*, 196 W.Va. 326, 472 S.E.2d 411 (1996), that

> [o]nce a disputed regulation is legislatively approved, it has the force of a statute itself. Being an act of the West Virginia Legislature, it is entitled to more than mere deference; it is entitled to controlling weight. As authorized by legislation, a legislative rule should be ignored only if the agency has exceeded its constitutional or statutory authority or is arbitrary or capricious.

Further, this Court has held that it is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law. *See State ex rel. Smith v.*

---

**28.** Both of these categories of information referenced in West Virginia Code of State Rules § 81–10–3.5 and 3.7 were requested by the Gazette and provided by the State Police. *See supra* n. 8.

**29.** In *Skaff II*, the proposed regulations promulgated by the State Police following the Court's directive in *Skaff, see* 190 W.Va. at 505, 438 S.E.2d at 848, were before the Court. The respondent submitted the proposed rules to the Court and, thereafter, the Court permitted the relator to make written comments and objections. *Skaff II*, 194 W.Va. at 180, 459 S.E.2d at 923. The Court then had both the regulations and objections evaluated by an expert in the criminal justice field. *Id.* at 181, 459 S.E.2d at 924. The Court, after addressing the objections raised, found that the regulations were acceptable. *Id.* at 185, 459 S.E.2d at 928.

*Maynard,* 193 W.Va. 1, 8–9, 454 S.E.2d 46, 53–54 (1994) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *accord* Syl. Pt. 1, *Stamper by Stamper v. Kanawha Cnty. Bd. of Educ.,* 191 W.Va. 297, 445 S.E.2d 238 (1994) (" ' "The Legislature, when it enacts legislation, is presumed to know its prior enactments." Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953).' Syllabus Point 5, *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986)."). There is, however, also a well-established principle of statutory construction which provides that " '[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions....' " *State v. Williams,* 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996) (quoting *State ex rel. Pinson v. Varney,* 142 W.Va. 105, 109–10, 96 S.E.2d 72, 75 (1956)).

■ As stated previously, the rule permits removal of the veil of confidentiality "by direction of the Superintendent (of the State Police) or by order of a court with competent jurisdiction." [30] W. Va.C.S.R. § 81–10–6.2. Thus, the rule's and the FOIA's seemingly inconsistent provisions on confidentiality can be reconciled by concluding that when West Virginia Code of State Rules § 81–10–6.2 (2008) is invoked to resist disclosure of information based on confidentiality, a court should perform an analysis under the West Virginia Freedom of Information Act, West Virginia Code §§ 29B–1–1 to –7 (2012), and case law decided thereunder, giving due regard to the rule as one factor to be considered under syllabus point two of *Child Protection Group v. Cline,* 177 W.Va. 29, 350 S.E.2d 541 (1986). Thus, a court considering a request for disclosure of information under the FOIA and the assertion of the statutory

invasion of privacy exemption may consider the policy disfavoring the release of information enunciated in West Virginia Code of State Rules § 81–10–6.2 as one of the factors set forth in *Cline. See* 177 W.Va. at 30–31, 350 S.E.2d at 542, Syl. Pt. 2. However, the rule is not dispositive of the issue, and the FOIA shall remain the proper analytical framework for issues of disclosure of public information.

**5. Whether it is possible to mould relief so as to limit the invasion of individual privacy.**

We now must consider whether it is possible to mould relief in this case so as to disclose public records under the FOIA while limiting any invasion of privacy exempt from public dissemination thereunder. Our decision in *Committee on Legal Ethics of the West Virginia State Bar ("Committee on Legal Ethics")* is helpful on this issue. In *Committee on Legal Ethics,* the Court was presented with whether information concerning an investigation of an attorney in a lawyer disciplinary action was subject to disclosure pursuant to a FOIA request. 174 W.Va. at 361, 326 S.E.2d at 707. Like the instant case, the legal ethics committee had refused to disclose the information sought based upon confidentiality as set forth in article VI, § 30 of the West Virginia State Bar By-Laws.[31] 174 W.Va. at 361, 326 S.E.2d at 707. The Court, in fashioning relief to advance the disclosure of public information while recognizing the limited need to keep some information confidential, "recognize[d] that during the initial investigatory stage there is a valid interest in providing protection against unwarranted injury arising from unsupported complaints.... Additionally, disclosure of facts regarding a complaint prior to the filing of formal charges can impair the investigatory function of the State Bar." *Id.* at 366, 326

---

**30.** Specifically, the rule provides that a court can order "[d]ocuments, evidence, and other items related to complaints, internal inquiries and/or contained in case files" to be "released, disseminated, or disclosed." W. Va.C.S.R. § 81–10–6.2.

**31.** The by-laws provided "that, except in certain circumstances, all information regarding attorney disciplinary proceedings is confidential." 174 W.Va. at 361, 326 S.E.2d at 707. The excep-

tions included: "(1) when a recommendation for public discipline is filed with this Court by the Ethics Committee; (2) when the lawyer who is the subject of Ethics Committee action requests public disclosure; or (3) when the Ethics Committee investigation is predicated upon a criminal conviction of the subject lawyer." *Id.* n. 1 (quoting W. Va. State Bar By-Law art. VI, § 30).

S.E.2d at 712. The Court found, however, that "once it is determined that there is probable cause to issue a formal charge, the constitutionally recognized interests served by public disclosure outweigh any necessary restrictions upon access to information for the benefit of individual attorneys or the profession as a whole." *Id.* Thus, the Court ultimately held in *Committee on Legal Ethics* that once probable cause is found to exist, the public is entitled to "all reports, records, and nondeliberative materials introduced at . . . [the hearing on the disciplinary charges], including the record of the final action taken." *Id.* at 360, 326 S.E.2d at 706, Syl. Pt. 5, in part. Moreover, the Court held that when a complaint of unethical conduct against an attorney was dismissed for lack of probable cause, "the public has a right of access to the complaint and the findings of fact and conclusions of law which are presented in support of such dismissal." *Id.*, Syl. Pt. 6, in part.

Similarly, in *Daily Gazette Co. v. West Virginia Board of Medicine,* 177 W.Va. 316, 352 S.E.2d 66 (1986), the Daily Gazette filed a request under the FOIA for disciplinary files relating to professional malpractice or incompetence of any physicians, podiatrist, or physician's assistants who were licensed by the West Virginia Board of Medicine ("Board"). The Board refused to disclose the information. *Id.* at 319, 352 S.E.2d at 68. The circuit court granted declaratory relief to the Daily Gazette, enjoining the Board from withholding any disciplinary files "relating to professional malpractice or incompetence." *Id.* at 318, 352 S.E.2d at 68. On appeal, this Court, in following the law it previously established regarding the disclosure of unethical conduct in attorney disciplinary actions, held once "a preliminary determination that probable cause exists to substantiate charges of disciplinary disqualification" is made by the Board, "the public . . . shall be entitled to all reports, records, and nondeliberative materials introduced . . . [at the hearing regarding the disciplinary disqualification]." *Id.* at 317, 352 S.E.2d at 67, Syl. Pt. 1. Further, in syllabus point two, the Court held that

[u]nder W. Va.Code, 30–3–14(*o*)(1986), if the West Virginia Board of Medicine finds that probable cause does not exist to substantiate charges of disciplinary disqualification, the public has a right of access to the complaint or other document setting forth the charges, and the findings of fact and conclusions of law supporting the dismissal.

177 W.Va. at 317, 352 S.E.2d at 67, Syl. Pt. 2. The Court also held that "[t]o the extent that any hospital peer review information is brought before the West Virginia Board of Medicine under W. Va.Code, 30–3–14(*o*)(1986), after probable cause to substantiate charges of disciplinary disqualification is found, the public is entitled to such information." 177 W.Va. at 317, 352 S.E.2d at 67, Syl. Pt. 3.

 We recognize that the processes and procedures in lawyer and physician disciplinary actions differ in some respects from those at issue in this case. Nonetheless, based upon foregoing analysis, we conclude that the premature disclosure of information about any investigation into allegations of misconduct by state police officers before any internal investigation or inquiry takes place, could cause an unwarranted invasion of privacy. Conversely, we conclude that after an investigation has taken place and determination made by either the Superintendent or the Internal Review Board as set forth in the legislative rule,[32] there is a compelling reason

---

32. We specifically are referring to West Virginia Code of State Rules § 81–10–8.13 (providing that "[u]pon completion of the investigation or inquiry and review by the OIC [referring to officer-in-charge] and the Superintendent, the OIC shall notify the employee who is the subject of the investigation or inquiry that the investigation is complete. The employee shall be notified if no disciplinary action is forthcoming and advised the matter is closed. The employee shall be notified in writing by the OIC if disciplinary action is authorized by the Superintendent. . . .") and West Virginia Code of State Rules § 81–10–9.1 (providing that "[e]mployees who have received two or more complaints (internal and/or external) or who have been involved in three or more use of force incidents during a three-month period are subject to review by the Internal Review Board. The Board may determine that no further action is required, that the employee be referred to the employee assistance program, that the employee be referred for remedial training, or that the employee be subject to review by

to disclose records developed and maintained by the State Police, a public agency, regarding the investigation. We therefore hold when a request is made under the West Virginia Freedom of Information Act, West Virginia Code §§ 29B–1–1 to –7 (2012), for information from the West Virginia State Police regarding an internal investigation or inquiry stemming from either an external or internal complaint of misconduct by a state police officer in connection with the officer's official capacity as a law enforcement officer, such information is subject to release to the public only after completion of the investigation or inquiry and a determination made as to whether disciplinary action is authorized by the Superintendent as set forth in West Virginia Code of State Rules § 81–10–8.13 (2008).[33] After the investigation or inquiry into the complaint has been concluded and a determination made as to whether disciplinary action is authorized by the Superintendent, the public has a right to access the complaint, all documents in the case file, and the disposition, with the names of the complainants or any other identifying information redacted in accordance with the confidentiality requirements established by West Virginia Code of State Rules §§ 81–10–1 to –11 (2008).

We further hold that when a request is made under the West Virginia Freedom of Information Act, West Virginia Code §§ 29B–1–1 to –7 (2012), for information from the West Virginia State Police regarding a state police officer who has received two or more either external or internal complaints of misconduct while on the job in his or her official capacity as a law enforcement officer, or where the state police officer has three or more use of force incidents during a three-month period and is thus subject to review by the Internal Review Board in accordance with the provisions of the Early Identification System, such information is subject to release to the public only when a decision has been rendered by the Internal Review Board as to whether further action is required. Only when a decision has been rendered by the Internal Review Board as to whether further action is required as set forth in West Virginia Code of State Rules § 81–10–9.1 (2008)[34] does the public have a right to access the records associated with the review by the Internal Review Board of the state police officer who was the subject of the review, with names of the complainants or any other identifying information redacted in accordance with the confidentiality requirements established by West Virginia Code of State Rules §§ 81–10–1 to –11 (2008).

Given the parameters established herein by this Court regarding the information that the public is entitled to receive, we turn to the *Vaughn*[35] index submitted by the State Police in order to try to ascertain what information should be disclosed under the FOIA. As this Court has held, it is the burden of the party claiming the exemption to show "the express applicability of ... [the claimed] exemption to the material requested." *Queen*, in part, 179 W.Va. at 97, 365 S.E.2d at 377, Syl. Pt. 7. In syllabus point six of *Farley v. Worley*, 215 W.Va. 412, 599 S.E.2d 835 (2004), we held:

> When a public body asserts that certain documents or portions of documents in its possession are exempt from disclosure under any of the exemptions contained in W. Va.Code, 29B–1–4 (2002 Repl.Vol.) (2003 Supp.), the public body must produce a *Vaughn* index named for *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The *Vaughn* index must provide a relatively detailed justification as to why each document is exempt, specifically iden-

the employee's immediate supervisor to attempt to determine the reasons for the employee's conduct or any circumstances that may have contributed to the conduct and evaluate the employee's current performance.").

**33.** Although there are no specific time frames for handling complaints filed in accordance with the legislative rule, *see* West Virginia Code of State Rules §§ 81–10–1 to–11, these matters are intended to be handled expeditiously and should not languish.

**34.** *See supra* n. 33.

**35.** *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

tifying the reason(s) why an exemption under W. Va.Code, 29B–1–4 is relevant and correlating the claimed exemption with the particular part of the withheld document to which the claimed exemption applies. The *Vaughn* index need not be so detailed that it compromises the privilege claimed. The public body must also submit an affidavit, indicating why disclosure of the documents would be harmful and why such documents should be exempt. Syllabus point 3 of *Daily Gazette Co., Inc. v. West Virginia Development Office*, 198 W.Va. 563, 482 S.E.2d 180 (1996), is hereby expressly modified.

A review of the appendix record submitted by the parties in this case demonstrates that neither party focused on what public records were actually being sought in this case in accordance with the FOIA.[36] Contrary to the Gazette's assertion that "the narrowly-tailored FOIA requests ... seek the State Police-generated records demonstrating their oversight and administration of alleged trooper misconduct[,]" the reality is that the requests are not narrowly tailored or limited to "alleged trooper misconduct," but encompass records generated as a result of alleged misconduct of any State Police employees, some of whom are not state police officers.

The State Police compounded the problem by submitting a *Vaughn* index that fails to provide any detail,[37] let alone "a relatively detailed justification as to why each document is exempt" from disclosure under the FOIA exemptions relied upon by the State Police. *See id.* For instance, the *Vaughn* index provides: "Each Fourth Quarter Report from 2005–2010 contains the following:

Quarterly report of employees with 2 or more complaints." Also noted is the "objection" which is as follows: "These documents contain information of a personal nature, including names and identification numbers, in which public disclosure thereof would constitute an unreasonable invasion of privacy pursuant to W. Va.Code § 29B–1–4(2)." We can neither discern from the listed information whether the "employees" are State Police officers, nor whether the "complaints" are of the nature that are subject to disclosure as set forth *supra* in this opinion. Another example from the *Vaughn* index: "WVSP three or more use of force reports tracking by quarter report." The objection is that "[t]hese documents contain information of a personal nature, including employees' names, in which public disclosure thereof would constitute an unreasonable invasion of privacy pursuant to *W. Va.Code* § 29B–1–4(2)...." Again, the information regarding "three or more use of force reports" may be subject to disclosure if the internal investigation or inquiry and/or the review by the Internal Review Board is complete within the holding set forth *supra*. It is simply impossible for this Court to say with any reasonable degree of certainty based upon the record before us what information within the State Police's possession is subject to disclosure.

■ Because the specific information sought by the Gazette is unclear in the record, it is necessary that the information sought be evaluated with specificity on remand. After the parties have provided specifics, the circuit court should conduct an in camera review of the documents requested.[38]

**36.** The Gazette's inability to specifically describe the public records being sought under its FOIA requests may be attributed to the fact that it is not in possession of the particular documents and thus has no way to describe them other than in the language of the legislative rule. In contrast, the State Police know exactly what the documents are and what is contained in them, but chose not to describe them either to the circuit court or to this Court.

**37.** *See supra* n. 37.

**38.** Upon remand, if the number of documents that the parties determine need to be examined in camera is voluminous, the trial court may appoint a commissioner to assist in the review of

the documents at issue and make recommendations to the court. *See Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W.Va. 498, 510–11, 625 S.E.2d 260, 272–73 (2005) ("Although no specific statute or rule authorizes trial courts to appoint commissioners to preside over discovery matters, it has been correctly noted that, 'Courts have (at least in the absence of legislation to the contrary) inherent power to provide themselves with the appropriate instruments required for the performance of their duties.... This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties as they may arise in the progress of a cause.' ") (quoting *In re Peterson*, 253 U.S. 300, 312, 40 S.Ct. 543, 64 L.Ed. 919 (1920) (footnote omitted)).

West Virginia Code § 29B–1–5(2) provides that the trial court "on its own motion, may view the documents in camera before reaching a decision." Likewise, in *Associated Press v. Canterbury*, 224 W.Va. 708, 688 S.E.2d 317 (2009), this Court held in syllabus point one that:

[i]n a proceeding seeking disclosure of public records under the West Virginia Freedom of Information Act, W. Va.Code § 29B–1–1, *et seq.*, a trial court may *sua sponte* order the production of the records withheld and hold an *in camera* review of the records in order to decide whether any of the records are subject to disclosure under the Act. W. Va.Code § 29B–1–5(2) (1977) (Repl.Vol.2007).

Given the Gazette's concession that the names of the State Police employees identified in the Early Identification System be redacted, there is no reason for the lower court to disturb that concession on remand.

## B. Law Enforcement Exemption

■■■ The next exemption at issue is found in West Virginia Code § 29B–1–4(a)(4) and referred to as the law enforcement exemption.[39] Under this provision, exempt from disclosure are "[r]ecords of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement." *Id.* The circuit court, relying upon this statutory exemption, found that "[s]ome of the documents may also contain records of law enforcement agencies that deal with the detection and investigation of crime and internal records and notations of such law enforcement agency which are maintained for internal use in matters relating to law enforcement.[ ]" The Gazette argues the State Police's claimed exemption under West Virginia Code § 29B–1–4(a)(4) is inapplicable because the public records at issue concern investigations that have been closed, i.e., resolved by the Superintendent or the Internal Review Board. In contrast, the State Police argue that the requested information is ex-

empt from disclosure "because it *may* contain complaints and information related to one or more criminal investigations."

■■■ "The primary purpose of the law enforcement exemption to the Freedom of Information Act, W. Va.Code § 29B–1–4(4), is to prevent premature disclosure of investigatory materials which might be used in a law enforcement action." *Hechler,* 175 W.Va. at 437, 333 S.E.2d at 802, Syl. Pt. 10. Additionally, we held in syllabus points eleven and twelve of *Hechler* that

"Records ... that deal with the detection and investigation of crime," within the meaning of *W. Va.Code,* 29B–1–4(4) [1977], do not include information generated pursuant to routine administration or oversight, but is limited to information compiled as a part of an inquiry into specific suspected violations of law.

The language, "internal records and notations ... which are maintained for internal use in matters relating to law enforcement," within the meaning of *W. Va.Code,* 29B–1–4(4) [1977], refers to confidential investigative techniques and procedures.

175 W.Va. at 437, 333 S.E.2d at 802. Thus, this Court has determined that "[t]o the extent that information in an incident report dealing with the detection and investigation of crime will not compromise an ongoing law enforcement investigation, we hold that there is a public right of access under the West Virginia Freedom of Information Act." *Ogden,* 192 W.Va. at 649, 453 S.E.2d at 632, Syl. Pt. 1.

Based upon this Court's review of the *Vaughn* index and the specific objections made therein by the State Police, we conclude that this particular exemption is simply not raised within the index. It is equally apparent from our review of the record that this exemption was only mentioned to the circuit court in passing, as no specific instances of the applicability of the exemption to the information sought from the FOIA request were presented to the circuit court. The State Police raise concern over the request regarding the central log of complaints

---

**39.** The State Police relied upon this exemption for the FOIA requests relating to the quarterly, bi-annual and yearly reports of the Internal Review Board sought by the Gazette.

"[b]ecause the central log of complaints is a fluid document that changes as each complaint is added and proceeds through to closure[,] how many open investigations, either criminal or internal, will change as well." To the extent that there were ongoing criminal investigations regarding state police officers which fell within this particular statutory exemption, it was incumbent upon the State Police to raise this exemption, with specificity, before the circuit court. Because there was no evidence submitted below regarding this exemption, the circuit court erred in finding that the law enforcement exemption applied.

### C. Internal Memorandum Exemption

■ Finally, the Gazette argues that the State Police did not initially raise the internal memorandum exemption, see West Virginia Code § 29B–1–4(a)(8) (exempting from disclosure under FOIA "[i]nternal memoranda or letters received or prepared by any public body[ ]"), as a basis for not providing the documents and addressed it only in their response to the motion for summary judgment. The State Police argue that "[b]ecause the Board [referring to the Internal Review Board] may request any type of information," it stands to reason that some of that information will include information exempted by the FOIA. The circuit court found that "the records requested also fit into the categories of '[i]nternal memoranda or letters received or prepared by any public body' " and are, therefore, exempt under the FOIA. See W. Va.Code § 29B–1–4(a)(8).

■ In syllabus point four of Daily Gazette Co., the Court held:

W. Va.Code, 29B–1–4(8) [1977], which exempts from disclosure "internal memoranda or letters received or prepared by any public body" specifically exempts from disclosure only those written internal government communications consisting of advice, opinions and recommendations which reflect a public body's deliberative,. decision-making process; written advice, opinions and recommendations from one public body to another; and written advice, opinions and recommendations to a public body from outside consultants or experts obtained during the public body's deliberative, decision-making process. W. Va. Code, 29B–1–4(8) [1977] does not exempt from disclosure written communications between a public body and private persons or entities where such communications do not consist of advice, opinions or recommendations to the public body from outside consultants or experts obtained during the public body's deliberative, decision-making process.

198 W.Va. at 565, 482 S.E.2d at 182.

The record is devoid of any evidence that the information at issue would be subject to this exemption. Like the law enforcement exemption previously discussed, this particular exemption is not the basis of an objection for providing the requests anywhere in the Vaughn index. Further, the one paragraph argument in the State Police's brief to this Court regarding why "some of the requested records may be exempt from disclosure" under the provisions of West Virginia Code § 29B–1–4(a)(8) is woefully inadequate. Consequently, the circuit court erred in finding the information requested by the Gazette fell within the internal memorandum exemption.

### IV. Conclusion

Based upon the foregoing, we remand this case to the circuit court to review the disputed documents in camera and determine what information is subject to disclosure under the FOIA and, if necessary, to conduct further proceedings consistent with this opinion.

Reversed and remanded with directions.